**In re Stephen Mark PAULSON, Debtor.**

**Bankruptcy No. 2–93–03319.**

United States Bankruptcy Court,
D. Connecticut.

July 21, 1994.

Joseph F. Long, Sp. Asst. U.S. Atty., East Hartford, CT, for U.S.

Paul E. Veilleux, Danielson, CT, for debtor.

Gilbert L. Rosenbaum, Chapter 13 Trustee, Hartford, CT.

*RULINGS AND ORDERS ON UNITED STATES' OBJECTION TO CONFIRMATION OF DEBTOR'S FIRST AMENDED PLAN AND TRUSTEE'S MOTION TO DISMISS CASE*

ROBERT L. KRECHEVSKY, Chief Judge.

I.

*ISSUE*

Bankruptcy Code § 1325(a)(3) provides that the court shall confirm a Chapter 13

---

plan if the plan "has been proposed in good faith...." 11 U.S.C. § 1325(a)(3). Despite the inherent generality and impreciseness of the nondefined term "good faith," courts of appeals have typically included the requirement that the bankruptcy court inquire whether the debtor is unfairly manipulating the Bankruptcy Code. *See, e.g., In re Johnson*, 708 F.2d 865, 868 (2d Cir.1983) ("[A] good faith determination requires a bankruptcy court to 'inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner.'") (quoting *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982)). At issue in this proceeding is whether the good-faith standard contemplates denial of confirmation of a debtor's plan where, after 11 years of deliberate refusal to file nonfrivolous income tax returns and to pay federal income taxes, a debtor with insignificant other debt seeks to utilize Chapter 13 for the sole purpose of discharging a substantial portion of these taxes.

## II.

### BACKGROUND

#### A.

In 1982, Stephen Mark Paulson, the debtor, determined that the U.S. income tax laws were unconstitutional, and he proceeded to file "protest tax returns" which "responded to every item of information called for with an asterisk reference to a footnote invoking a series of constitutional amendments." *Paulson v. United States*, 758 F.2d 61, 62 (2d Cir.1985). The Internal Revenue Service (IRS), pursuant to 26 U.S.C. § 6702(a), as-sessed a civil penalty against the debtor for filing a frivolous income tax return. The District Court for the District of Connecticut dismissed the debtor's complaint brought for a refund of the civil penalty. The debtor appealed the dismissal to the Second Circuit which denied his appeal as "frivolous" and assessed double costs plus an attorney's fee of $2,500 to be paid to the United States. *Id.* Notwithstanding this ruling, the debtor continued to file protest tax returns for subsequent years through 1992, claiming the protection of the Fifth Amendment. During this period, the debtor was continuously employed as an engineer in the Commonwealth of Massachusetts. Although some taxes were withheld by his employer, the withholding was insufficient to pay the debtor's total tax liability. Due to the debtor's continuing refusal to cooperate, the IRS was forced to obtain tax information from third-party sources. The debtor has never satisfied the double costs and attorney's fees assessed by the Second Circuit, and he failed to schedule these obligations as debts in the present proceeding.

In 1992, the IRS, through its collection facilities, levied upon the debtor's wages.[1] The debtor responded by filing a bankruptcy petition under Chapter 7, following which the IRS removed its wage levy. The debtor received a Chapter 7 discharge on October 5, 1992, which, pursuant to Code § 523(a)(1), did not discharge his tax liabilities.[2] The IRS levied on the debtor's wages a second time. The debtor thereupon filed a Chapter 13 petition on November 20, 1992, and the IRS released its wage levy. The bankruptcy court dismissed, on jurisdictional grounds, the debtor's Chapter 13 case on June 30, 1993. The IRS levied on the debtor's wages a third time. The debtor, on August 26,

---

**1.** The total voluntary payments received from the debtor amounted to $1,800, paid in 1990, and applied by the IRS toward the 1982 unpaid taxes.

**2.** Section 523(a)(1) reads as follows:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—
(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title,

whether or not a claim for such tax was filed or allowed;
(B) with respect to which a return, if required—
(i) was not filed; or
(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax....

11 U.S.C. § 523(a)(1).

1993, filed the present Chapter 13 case. The debtor expressly acknowledged he filed each of his three bankruptcy petitions to stop the IRS collection activities. He testified the wage levies left him insufficient funds for living expenses.

### B.

The proofs of claim filed in the debtor's estate disclose total unsecured debts of $93,-313.68, all of which, except for $785.37, are owed for state or federal income taxes. The U.S. income taxes which qualify as a § 507(a)(7) priority claim total $11,164.64. The Massachusetts priority taxes total $1029.00. The balance of taxes due the IRS total $80,017.23.

The debtor, a resident of Thompson, Connecticut, is unmarried, having been divorced in 1988, and presently earns $37,000 annually. He is responsible for $125.00 weekly child support and $100.00 weekly alimony.

The debtor's First Amended Plan proposes to pay only the priority tax claims, as required by § 1322(a)(2), over five years without interest. The remaining tax claims are to be paid nothing.[3] The debtor recently filed with the IRS his tax returns for the years 1982 through 1993.[4] He testified he now accepts that he has a legal obligation to file timely tax returns. The debtor projects his monthly expenditures, including child support and alimony, to be $2,055.00 against monthly take-home pay of $2,345.77. The debtor's plan proposes that the debtor contribute for 60 months $259.00 of the $290.77 in excess monthly income to the plan. The plan also proposes that his attorney receive legal fees of $2,200.00 out of such payments.

### III.

### *DISCUSSION*

### A.

It is common ground that the determination of whether a plan has been proposed in good faith must be made on a case-by-case basis and must include the "totality of the circumstances" surrounding the case. *See, e.g., In re Robinson,* 987 F.2d 665, 668 (10th Cir.1993) (A determination of whether a Chapter 13 plan has been proposed in good faith "must be made on a case by case basis, looking at the totality of the circumstances."). It is also generally held that where the debt to be discharged under Chapter 13 could not be discharged under Chapter 7, a court should closely scrutinize the debtor's motivation and any other relevant factors in considering whether good faith exists. *See In re Caldwell,* 895 F.2d 1123, 1126–27 (6th Cir. 1990) (holding that while "an attempt to discharge a debt under Chapter 13 which is not dischargeable under Chapter 7 is not conclusive evidence that the Chapter 13 plan was not made in good faith," a plan proposing to repay only a small portion of such debt "deserves 'particular scrutiny' ") (quoting *In re Warren,* 89 B.R. 87, 95 (9th Cir. BAP 1988)); *In re Warren,* 89 B.R. at 93 ("In light of the spirit and purposes of Chapter 13, courts should not grant, without due consideration, a discharge under Chapter 13 which might not be available under Chapter 7."); *cf. In re LeMaire,* 898 F.2d 1346, 1352 (8th Cir.1990) ("We recognize that 'a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where *other factors* suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims.' ") (quoting *Neufeld v. Freeman,* 794 F.2d 149, 153 (4th Cir. 1986)); *In re Schaitz,* 913 F.2d 452, 455–56 (7th Cir.1990) ("[T]he right to discharge an otherwise nondischargeable debt through a Chapter 13 proceeding is a privilege to be granted or denied by the bankruptcy court in the exercise of an informed discretion."); *Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir.1987) (holding that the

---

**3.** Pursuant to § 1328(a), a Chapter 13 discharge, received upon consummation of a confirmed plan, discharges debts covered by § 523(a)(1). Section 1322(a)(2) requires a plan to provide for payment of § 507 priority claims. Section 507(a)(7) roughly provides that income taxes due for the three years before the date of the filing of a bankruptcy petition are a priority claim.

**4.** The debtor filed his 1993 return on April 15, 1994, the date of the hearing on confirmation of his plan. The return did not include full payment of the indicated tax.

debtor's Chapter 13 plan was not an abuse of the bankruptcy laws, even though the student loans involved would not be dischargeable under Chapter 7, because the circumstances showed that the plan was "a serious attempt to repay the student loans").

### B.

All courts that have addressed the specific issue before the court have concluded that the use of Chapter 13 by so-called tax protesters in an attempt to discharge their federal tax liabilities amounts to an unfair manipulation of the Bankruptcy Code. The Seventh Circuit Court of Appeals has upheld a finding that a Chapter 13 petition was not filed in good faith warranting dismissal of the case where the debtor's prepetition tax protest activity led to his primary source of indebtedness, and the filing of the Chapter 13 petition was for the purpose of avoiding a portion of his federal tax liability. *In re Love,* 957 F.2d 1350, 1359 (7th Cir.1992) ("[F]iling a Chapter 13 petition in order to thwart the payment of an otherwise nondischargeable income tax debt arising from the unlawful failure to pay income taxes was not one of the intended purposes of the bankruptcy provisions.").

Three lower court rulings considering whether good faith exists to confirm a Chapter 13 plan that sought to discharge a substantial portion of a debtor's federal tax liability have found good faith was lacking. While these courts all impliedly contemplated that in certain circumstances it might be appropriate to confirm a plan as having been proposed in good faith even though it would discharge a portion of the debtor's federal tax liability, the facts as presented to those courts did not support such a finding.

The debtor in *In re Hazel,* 68 B.R. 287 (Bankr.E.D.Mich.1986), *aff'd,* 95 B.R. 481 (E.D.Mich.1988), was a self-styled tax protester who intentionally failed to file income tax returns from 1978 to 1985 and filed false tax withholding forms with his employer, creating a $36,000 tax liability to the federal government. The court, while noting that the debtor alleged he had abandoned his tax protester status and acknowledged his obligation to pay his tax debt, denied confirmation of the plan and held that "it is bad faith pursuant to [§ 1325(a)(3) ] to file a petition in bankruptcy and seek confirmation of a plan that discharges tax claims arising from the debtor's unlawful refusal to pay those taxes." *Id.* 68 B.R. at 290. The court also dismissed the case.

In *Schaffner v. I.R.S.,* 95 B.R. 62, 65 (E.D.Mich.1988), the district court affirmed the bankruptcy court's denial of confirmation of a plan filed by a tax protester whose continued actions showed an intent to evade paying taxes. The court found that the plan, which sought to discharge over 85% of the taxes due, could not have been proposed in good faith. *Id.* at 64–65. The court also upheld dismissal of the debtor's case.

A Georgia bankruptcy court, in *In re Weathersbee,* No. 89–10237, 1990 WL 599374, 1990 Bankr. LEXIS 334 (Bankr.S.D.Ga. Jan. 30, 1990), with facts almost identical to the instant case, concluded that confirmation of a tax protester's plan would improperly lend assistance to those seeking to avoid payment of taxes. The ruling denied confirmation of the plan and dismissed the case.

### C.

One of the major reasons, if not the major reason, for Congress having enacted the provisions of Chapter 13 was to provide flexible relief to wage earners who voluntarily sought a means of repaying their debts without incurring the stigma and other consequences of straight liquidation bankruptcy. *See In re Lennon,* 65 B.R. 130, 131–32 (Bankr.N.D.Ga.1986). The court, after full consideration of the totality of the circumstances in this case, and with the awareness that there are no mechanical tests, concludes that this debtor's use of Chapter 13 is not in good faith. While the debtor contends that he needs the protection of Chapter 13 to prevent the IRS levy on his wages because otherwise he will be unable to comply with his child support and alimony obligations, a witness for the IRS testified that the IRS, when levying on wages, makes allowances for court support orders.

The debtor's prepetition flouting of tax laws is the exclusive source of his present

indebtedness. His plan proposes to satisfy none of the unpaid tax liabilities except for those mandated by the § 507 priority category. The court concludes that the debtor is unfairly manipulating the Bankruptcy Code, as evidenced by his past eleven-year running battle with the IRS. The debtor has already received the benefit of a Chapter 7 discharge, where Congress has forgone the good-faith inquiry. That inquiry is mandated in Chapter 13, and the court is satisfied that the debtor's plan does not pass the test of good faith.

### IV.

### CONCLUSION

The objection of the United States to confirmation of the debtor's first amended plan is sustained. The motion of the Chapter 13 trustee to dismiss the case is granted. It is

SO ORDERED.