**In re Ernest R. LILLEY, Jr., Debtor.**

**Bankruptcy No. 94–17688DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 25, 1996.

John R. Crayton, McCarthy & Crayton, Bensalem, PA, for Debtor.

Shannon L. Cohen, Washington, DC, for Internal Revenue Service.

Edward Sparkman, Standing Chapter 13 Trustee, Philadelphia, PA.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

On July 31, 1996, the Court of Appeals, in an Opinion reported as *In re Lilley*, 91 F.3d 491 (3d Cir.1996) (*"Lilley IV"*), reversed the decision of the district court which would have required this court to grant the motion ("the Motion") of the Internal Revenue Service ("the IRS") seeking to dismiss the instant Chapter 13 case of ERNEST R. LILLEY ("the Debtor"), reported as *In re Lilley*, 185 B.R. 489 (E.D.Pa.1995) (*"Lilley III"*), and remanded the disposition of the Motion to this court. In so doing, *Lilley IV* disapproved of this court's holding, in our original decision denying the Motion, reported as *In re Lilley*, 181 B.R. 809 (Bankr. E.D.Pa.1995) (*"Lilley II"*), that no good faith filing requirement exists in Chapter 13 cases. *Id.* at 811. In so doing, the *Lilley IV* court stated as follows, 91 F.3d at 496:

> We ... join the Seventh, Ninth and Tenth Circuits in holding that the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances. *In re Love*, 957 F.2d [1350,] at 1355 [ (7th Cir.1991) ]; *In re Gier*, 986 F.2d [1326,] at 1329 [ (10th Cir. 1993) ]; *In re Eisen*, 14 F.3d [469,] at 470 [ (9th Cir.1994) ]. Factors relevant to the totality of the circumstances inquiry may include, among others, the following:
>
>> "the nature of the debt ...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors."

*In re Love*, 957 F.2d at 1357.[2] Accordingly, we will remand this matter to the district court with directions to remand to the bankruptcy court for a determination whether, in light of the totality of the circumstances, Mr. Lilley filed his Chapter 13 petition in good faith.

[2] In light of *In re Gathright*, 67 B.R. 384, 390 (Bankr.E.D.Pa.1986), [*appeal dismissed*, 71 B.R. 343 (E.D.Pa.1987),] we expressly reject one of the factors identified by the Seventh Circuit in *In re Love:* the question of whether the debt would be nondischargeable in a Chapter 7 proceeding.

Our present task is to apply the good faith test adopted in *Lilley IV* to the instant facts.

Reviewing the decisions cited by the *Lilley IV* court and by the Internal Revenue Service ("the IRS") in its briefs on appeal, which is all that the IRS decided to submit to us by way of argument on remand, we will articulate a good faith test and proceed to apply it to the instant facts. We believe that the most important aspect of the test is whether a debtor engages in fraudulent misrepresentations or serious nondisclosures of material facts in the Chapter 13 case in question, comparable to the criteria for presenting a plan in good faith under 11 U.S.C. § 1325(a)(3), pursuant to our prior decision in *Gathright, supra*, 67 B.R. at 387–88, which is favorably referenced in *Lilley IV*, 91 F.3d at 496 n. 2 *supra*, and which cites (as updated) 5 COLLIER ON BANKRUPTCY, § 1325.04, at 1325–15 to 1325–16 (15th ed. 1996). We believe that the litany of unlimited potential criteria referenced in *Lilley IV* permits us to review all and any additional factors which strike this court as worthy of note, particularly the amount and number of payments given the Debtor's particular financial circumstances, but does not require us to consider all of these factors in every case.

Applying the foregoing standards to the instant facts, we conclude that the Debtor's case should not be dismissed provided that he amends his plan to extend payments for sixty (60) months and agrees to grant the IRS relief from the automatic stay in order to pursue his nondebtor wife in its attempt to recover property allegedly improperly transferred to her.

### B. FACTUAL AND PROCEDURAL HISTORY

The unusual underlying facts of this case have been recited in *Lilley IV*, 91 F.3d at 492–93; *Lilley III*, 185 B.R. at 489–92; *Lilley II*, 181 B.R. at 810–11; and, in most detail, in our decision denying dischargeability of the Debtor's indebtedness to the IRS in

a prior Chapter 7 case, reported as *In re Lilley,* 152 B.R. 715, 717–20 (Bankr.E.D.Pa. 1993) (*"Lilley I"*). We will merely summarize them briefly here.

In January 1971, the United States Secret Service seized the assets of the Debtor's coin minting business in the mistaken belief that he was unlawfully engaged in counterfeiting activities. Although the Secret Service ultimately determined that the Debtor had not engaged in any unlawful activity, and returned his assets to him, the business deteriorated and failed, and the Debtor attributed his business failure to the seizure of his assets.

Being unable to obtain monetary redress from the Secret Service for the loss which he believed it had caused by normal channels, the Debtor thereafter refused to pay income taxes. As a result, the Debtor was, in 1983, convicted of willful failure to file certain tax returns, served a one-year prison sentence, and amassed $178,000 in delinquent federal tax debt. His appeals to the United States Tax Court ("the USTC") arguing that his failure to file income tax returns was due to both mental illness were rejected.

In 1992 the Debtor filed a Chapter 7 bankruptcy case in this court. In *Lilley I,* we found, on the basis of collateral estoppel from the USTC decisions, that 11 U.S.C. § 523(a)(1)(C) precluded discharge of the debt. 152 B.R. at 721–23.

However, in light of the 1994 amendments to the Bankruptcy Code, which, *inter alia,* increased the unsecured debt limit in a Chapter 13 proceeding to $250,000, *see* 11 U.S.C. § 109(e), the Debtor was able to file the instant Chapter 13 case on November 21, 1994. The Debtor hoped to thereby prevent the IRS from continuing to levy on all of his income, monthly Social Security benefits of $904.

At an April 27, 1995, hearing on the Motion, the IRS's objections to confirmation, and an adversary proceeding challenging the secured status of the IRS's claim, the parties orally stipulated that the Debtor is now 66 years old, in poor health, and disabled. The IRS orally agreed that the indebtedness of about $178,000 was not priority debt. With respect to the IRS's secured status, although

the parties agreed that the IRS has a valid federal tax lien against all of the Debtor's property to secure its entire debt, they also agreed that the Debtor had no property of any value and hence the debt could be deemed unsecured. However, the IRS indicated an intention to initiate a "transferee suit" against the Debtor's wife Sarah, and further stated that it believed that a discharge of the Debtor's obligations to it could extinguish such rights.

After we learned of the district court's remand to us in turn in light of the *Lilley IV* mandate, we requested the parties to provide us with copies of their appellate briefs and inform us how they wished to proceed on remand, scheduling a status conference of October 22, 1996, to discuss same. The parties agreed that the matter should be decided on April 27, 1995, oral stipulation and provided us with copies of their rather short appellate briefs. Neither party accepted our invitation to supplement those statements of their respective positions in light of *Lilley IV.*

## C. DISCUSSION

In *Lilley IV,* the court made specific reference to the *Love, Gier,* and *Eisen* decisions. *See* page 726 *supra. Eisen* is factually inapposite. The debtor there was castigated because he made several Chapter 13 filings, misrepresented his interests in a duplex which he had contracted to sell, and was found to have improperly filed his chapter 13 cases solely to avoid an executory contract to sell the duplex. 14 F.3d at 470–71.

*Gier* involved the case of a Chapter 13 debtor who, like the Debtor, was attempting to discharge a debt previously held nondischargeable in a prior Chapter 7 case. 986 F.2d at 1327. The *Gier* court affirmed a bankruptcy court decision criticizing the debtor's (1) small ($75 monthly) payments for the short (36–month) plan period; (2) $177 of monthly disposable income for which he had not accounted; and (3) his efforts to discharge a debt found nondischargeable in his prior Chapter 7 case. 986 F.2d at 1328–29.

Most analogous to the instant facts are those of *Love. Love* involved an allegedly reformed tax protestor who was attempting to discharge many years of unpaid income taxes owed to the IRS. 957 F.2d at 1352.

While deciding that the burden of proving bad faith lay with the IRS, rather than the Debtor's being required to prove his good faith, *id.* at 1355–56, the *Love* court affirmed a bankruptcy court dismissal focusing upon the debtor's plan to make payment in full to another creditor while paying only about ten (10%) percent of his debt to the IRS, his failure to list three insurance policies on his Schedules, and his projection of wages which omitted consideration of regular overtime and bonuses. *Id.* at 1358–62.

In its appellate briefs, the IRS cited several other cases, *In re Waldron*, 785 F.2d 936 (11th Cir.), *cert. dismissed sub nom. Waldron v. Shell Oil Co.*, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986); *In re Morimoto*, 171 B.R. 85 (9th Cir. BAP 1994); *In re Gros*, 173 B.R. 774 (Bankr.M.D.Fla.1994); *In re Cappuccetti*, 172 B.R. 37 (Bankr.E.D.Ark. 1994); *In re Paulson*, 170 B.R. 496 (Bankr. D.Conn.1994); and *In re Spurgeon*, 166 B.R. 150 (Bankr.D.Neb.1993), in support of the Motion.

The facts of *Waldron* are quite distinct from those of the instant case. That case involved a filing by an affluent bankruptcy practitioner who admitted that his sole purpose for filing was to attempt to reject and thereby avoid a stock option agreement. 785 F.2d at 937–39. The court referenced the debtor's strategy as a "preposterous scheme" which it refused to countenance. *Id.* at 938.

The other cases have only one common theme which they share with the instant case. All involve the IRS as a movant-creditor opposing the debtor's filing on "good faith" grounds. Two of these cases, *Morimoto, supra;* and *Paulson, supra,* involved "unreformed" tax protestors. The *Gros* debtor offended the court by filing five times in just over two years and by his consistent failures to abide by orders requiring him to file tax returns. 173 B.R. at 776–77. The *Spurgeon* debtor similarly failed to file his tax returns and then also failed to file an amended plan by the court's prescribed deadline. 166 B.R. at 151–51. The *Cappuccetti* debtors' main transgressions were an affluent lifestyle and numerous inaccuracies in expenses, income, and valuations of assets on their Schedules. 173 B.R. at 39–41.

The instant Debtor's circumstances bear little in common with any of the foregoing debtors. He is admittedly not well, aged, and not by any definition affluent. There is no basis for any claim that he is attempting to shortchange the IRS by giving less·than his best financial effort for the 36–month period of his plan, which was an important consideration in *Love, Gier,* and *Cappuccetti.* As we later note, there appears to be no reason why the Debtor could not continue to make payments for 60 months. However, there is no claim that he has misrepresented his assets and/or income, as did the debtors in *Love, Gier,* and *Cappuccetti.*

Furthermore, the Debtor has not violated any orders of the bankruptcy court, like the debtors in *Gros* and *Spurgeon.* He filed his case to discharge a debt, unlike the *Eisen* and *Waldron* debtors, who were found to be attempting to improperly utilize their bankruptcy cases for improper purposes. Although we loosely referred to the Debtor as "akin to ... a tax protestor" in *Lilley I,* 152 B.R. at 722, that reference was merely to distinguish him from "a common tax cheat." *Id.* He is certainly not a classic tax protestor in the mold of the *Love, Morimoto,* and *Paulson* debtors.

Finally, several of these cases, notably *Love, Gier,* and *Paulson,* emphasized the fact that the debts in issue would not have been dischargeable in a Chapter 7 case. *Lilley IV* expressly holds that this "factor" should not be considered.

In attempting to get our hands on the true nature of the good faith filing requirement, assuming, as we must, that we are compelled to do so, we will direct our attention to the classic, general definitions of "good faith" and "bad faith." In *Gathright, supra,* 67 B.R. at 387–88, we quoted both Collier and BLACK'S LAW DICTIONARY for definitions of "good faith," finding that the polestar of this concept is honesty, absence of fraud or design, the absence of intentional nondisclosures of material facts, and the like. Perhaps even more instructive is the definition in BLACK'S LAW DICTIONARY 127 (5th ed. 1979), of "Bad faith," which reads as follows:

> The opposite of "good faith," generally implying or involving actual or constructive

fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Term "bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

We have stated, most recently in *In re Landes*, 195 B.R. 855, 861–62 (Bankr.E.D.Pa. 1996), that testing a debtor's fraud, sinister motives, or knowing and intentional wrongful conduct in the course of the bankruptcy case in issue is the only conduct which should justify a "for cause" dismissal under 11 U.S.C. § 707(a), similar to our assessment in *Gathright* as to what should constitute bad faith precluding confirming of a Chapter 13 plan on the basis of § 1325(a)(3). While *Lilley IV* holds that examination of a debtor's honesty and absence of fraud in the course of the bankruptcy case in issue should not be the end point of a good faith filing analysis, *Lilley IV* does not suggest that it should not be the starting point. The *Lilley IV* court includes whether the debtor has been "forthcoming with the bankruptcy court and the creditors" among the circumstances to be considered. The statement that a bankruptcy court should consider the "totality of the circumstances," which "may include" other considerations, can be best read as simply giving the bankruptcy court more room to make its assessment. However, the traditional concept of "bad faith" requires that fraud, deception, or knowing and intentional wrongdoing as a necessary element.

In *Lilley I*, although we spoke somewhat harshly of the Debtor in denying dischargeability of his debt to the IRS, we recognized that the Debtor was not motivated by "stealth or calculated efforts to simply reduce [his] taxes," and that his conduct was "indicative of mental illness." 152 B.R. at 722. At worst we found the Debtor stubborn and overly persistent in his misguided effort to recoup his perceived unjust losses which he attributed to the hands of the government from the IRS. *Id.* at 722, 723. We can readily distinguish his sort of conduct from that of a debtor who is capable of paying more than he chooses to disclose, who seeks to totally misuse the Bankruptcy Code, or who is an unrepentant tax protestor.

We are, however, disappointed in two aspects of the Debtor's conduct. First, we see no reason why the Debtor should not continue to make his modest $50 monthly payments into the plan for five years instead of the three-year minimum to avoid denial of confirmation pursuant to 11 U.S.C. § 1325(b)(1)(B). *Compare Gier, supra,* 986 F.2d at 1327 (court points to the short, three-year span of the debtor's proposed plan as an element of bad faith).

Second, the Debtor's counsel indicated, at the post-remand colloquy of October 22, 1996, that the Debtor no longer planned to adhere to counsel's representation, in making the record on which this contested matter was decided on April 27, 1995, that the Debtor agreed that the IRS could obtain relief from the automatic stay to attempt to assert transferee liability against his nondebtor wife Sarah. The codebtor stay does not appear to apply. *See In re Dye,* 190 B.R. 566 (Bankr. N.D.Ill.1995); and *In re Greene,* 157 B.R. 496 (Bankr.S.D.Ga.1993). Even if it did, the IRS would clearly be entitled to relief against Sarah pursuant to 11 U.S.C. § 1301(c)(2). *See In re Yorke,* 1996 WL 509614, at *4 (Bankr.E.D.Pa. Sept. 4, 1996). The IRS has, moreover, represented that it needs relief from the stay to join the Debtor in such an action. Since we are allowing the Debtor the dispensation of a discharge conditioned on his making only modest plan payments for five years, we believe that it is improper for the Debtor to in any way impede the IRS from alternative measures to collect its substantial claim. We therefore believe that it is fair to require that the Debtor agree to fully cooperate with the IRS efforts to collect its debt from Sarah. We will hence include his agreement to grant the IRS relief from the automatic stay to do so as an additional condition for confirming the Debtor's Chapter 13 plan.

In *In re Oglesby,* 150 B.R. 620, 628 (Bankr. E.D.Pa.), *vacated & remanded,* 158 B.R. 602 (E.D.Pa.), *reinstated,* 161 B.R. 917 (Bankr. E.D.Pa.1993), *aff'd,* C.A. No. 94–0617 (E.D.Pa. April 7, 1994), we conditioned an order confirming a plan of the debtor on her amending her plan to accommodate what we believed were important conditional directives. We believe that it is totally appropriate, in exercising our broad power to consider the totality of the circumstances in making a good faith assessment, to require the Debtor to propose a plan which is, in our view, as fair as possible to the IRS.

### D. CONCLUSION

An order incorporating the legal conclusions reached in this Opinion follows.

### ORDER

AND NOW, this 25th day of October, 1996, after a colloquy of October 22, 1996, with interested counsel in light of the Opinion and Order of the Court of Appeals reported at 91 F.3d 491 (3d Cir.1996), remanding this court's decision of May 3, 1995, which, *inter alia,* denied the motion of the Internal Revenue Service ("the IRS") to dismiss this case ("the Motion"), it is hereby ORDERED AND DECREED as follows:

1. The Motion is DENIED, subject to the Debtor's compliance with the remaining provisions of this order.

2. The Debtor shall file and appropriately serve on all requisite parties and the court in chambers, on or before October 31, 1996, an amended plan which shall include the following provisions:

   a. An extension of the Debtor's plan payments from thirty-six (36) months to sixty (60) months.

   b. An agreement that the Debtor will allow the IRS relief from the automatic stay as requested in its motion filed on October 3, 1996.

3. Any Objections to any amended plan filed shall be filed and appropriately served on all interested parties and the court in chambers on or before November 20, 1996.

4. A final hearing to consider confirmation of any amended plan filed and to consider dismissal of this case if no such amended plan is filed is scheduled on

TUESDAY, NOVEMBER 26, 1996, AT 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 4 (Room 3620), Third Floor, United States Court House, 601 Market Street, Philadelphia, PA 19106.