**In re George Louis CARAPELLA, Debtor.**

**George Louis CARAPELLA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Bankruptcy No. 86–4205–8P7.
Adv. No. 87–020.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 6, 1989.

James A. Sheehan, B. Gray Gibbs, St. Petersburg, Fla., for plaintiff.

Hillary B. Burchuk, Dept. of Justice, Tax Div., Washington, D.C., Robert W. Merkle, and Robert W. Genzman, Office of U.S. Atty., Tampa, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 7 liquidation case, and the matter presented for this Court's con-

sideration is in the context of an adversary proceeding initiated by George Louis Carapella, the Debtor in the above-captioned case. The one-count Complaint was filed against the United States of America and the Internal Revenue Service (Government) and seeks a determination from this Court that the Debtor's personal income tax liability for the years 1977, 1978, and 1979 are dischargeable obligations pursuant to 11 U.S.C. § 727(a).

On April 9, 1987, the Debtor moved for Summary Judgment alleging that his federal income tax liabilities for the years at issue were dischargeable as a matter of law. The Government opposed the Debtor's Motion, claiming that the debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B)(i) and § 523(a)(1)(C) on the bases that the Debtor's 1977 tax return was fraudulent and that the Debtor willfully failed to file federal income tax returns for the years 1978 and 1979 for the purpose of evading tax liability for these years. On August 5, 1987, this Court entered an Order denying the Debtor's Motion for Summary Judgment.

On November 12, 1987, the Government filed its Motion for Summary Judgment, alleging that the liabilities for the years at issue were nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B)(i) and § 523(a)(1)(C) based upon the same allegations the Government argued in opposition to the Debtor's Motion for Summary Judgment. While recognizing that it was undisputed that the Debtor did not file Federal Income Tax Form 1040 with respect to his income tax liabilities for the years 1978 and 1979, this Court nevertheless denied the Government's Motion for Summary Judgment, revisited the Debtor's Motion for Summary Judgment and held that the Debtor's federal income tax liabilities for the years 1978 and 1979 did not fall within the exception to discharge encompassed in 11 U.S.C. § 523(a)(1)(B)(i). In that Order, 84 BR 779, this Court concluded that the Debtor was entitled to a partial summary judgment as it related to the nondischargeability claim of the Government based on § 523(a)(1)(B)(i). Specifically, this Court found that the Form 870, signed by the Debtor and not accompanied by schedules, nevertheless could be construed to be an acceptable return under Revenue Ruling 74–203. This Court also held that issues of fact remained with respect to the dischargeability vel non of these liabilities pursuant to 11 U.S.C. § 523(a)(1)(C) and ordered that the matter be scheduled for trial on this issue. Accordingly, the only issue which was tried and which remains for resolution is whether or not the Debtor's income tax liabilities for the years 1977, 1978 and 1979 are nondischargeable pursuant to § 523(a)(1)(C) of the Bankruptcy Code, which excepts from the debtor's general bankruptcy discharge, tax liabilities for which the debtor has either filed a fraudulent return or has attempted to evade or defeat payment of the taxes. The relevant and germane facts as established from the record and the final evidentiary hearing are as follows:

During the tax years at issue, the Debtor was involved with the following corporations which were engaged in the business of selling diet aids and vitamins: Bar–Jon, Jonathan Merchandising, Mar–Dee, Ken–Dee, and Ambrose Corporation. (Tr. 22–23) The principal shareholder of each of these corporations was, in fact, someone other than the Debtor. However, it is undisputed that the Debtor's involvement with these corporations was such that he actually controlled the day-to-day operations of the mail order business. In fact, the Debtor admitted to an Internal Revenue agent that the corporations were, in fact, shell corporations which were entities used by the Debtor to funnel monies received from the diet pill business to himself. In addition, the Debtor confirmed as accurate a summary of the Debtor's income for the years 1977, 1978 and 1979 which the Revenue Agent had prepared based on various information obtained from financial institutions.

Based on all of the above, the agent recommended that a deficiency assessment against the Debtor be made for unpaid taxes, penalties, and interest in the amounts of $341,182.20 for 1977, $731,-

454.99 for 1978, and $39,965.91 for 1979, respectively.

Based on the foregoing undisputed facts, the Government contends that the Debtor's entire course of conduct establishes that the Debtor attempted to evade or defeat his personal income tax liabilities for the years 1977, 1978 and 1979. In addition, notwithstanding that the Debtor did file a tax return for 1977, the Government contends that the return was fraudulent. In support of this contention, the Government presented evidence that the 1040 return filed by the Debtor for the taxable year 1977 indicated that the Debtor's adjusted gross income for that year was $2,310.00. (Government's Exh. No. 8) However, after the examination of this return by the Revenue agent, the Debtor agreed that his adjusted gross income for 1977 totalled $278,-803.00. (Government's Exh. No. 5, Tr. 73, 126–127) As further foundation for this contention, the Government produced evidence that the Debtor was convicted of mail fraud in connection with his operation of the diet pill business, that the entire structuring of these several corporations was done so as to evade government detection and conceal income which the Debtor derived from these corporations and that this entire course of conduct evidences a willful attempt by the Debtor to evade or defeat personal income tax liability.

In opposition, the Debtor contends first that the corporations were not shell operations, but were, in fact, corporations whose shares were owned by individuals other than himself and that he merely acted as a consultant to these corporations for which he received compensation based upon a set percentage of sales. Be that as it may, this Court is satisfied that the Debtor is now estopped to assert that the corporations were not in fact shell corporations inasmuch as he has already admitted that he exercised control and dominion over the same and further admitted that he structured the corporations in the manner described above so as to evade government detection.

The Debtor also contends that his conduct in September 1979 vitiates the Government's claim of nondischargeability based on § 523(a)(1)(C) of the Bankruptcy Code. It appears that the Debtor, as a result of wide publicity by the press and other forms of media which implied that no criminal proceedings would be commenced against delinquent taxpayers who voluntarily take steps to comply with the applicable IRS laws, instructed his tax attorney, Mr. Richard Baron, to contact the Internal Revenue Service, advising the Service that the Debtor intended to amend his 1977 return and prepare and file an original 1978 return. The Debtor also points out that he admitted to the Revenue agent that the corporations were in fact shell corporations and further confirmed the summary of income prepared by the Revenue agent and executed a consent form, Form 870, agreeing to the assessment of his tax liabilities against him. (Tr. 90)

In support of his contention that he did not file a fraudulent return for the year 1977, the Debtor intimated at the final evidentiary hearing that he fully supplied his tax attorney, Mr. Baron, with all the information necessary to amend his 1977 and 1978 tax returns and that Mr. Baron, after some type of confrontation with one of the Revenue agents, made a decision independent of the Debtor, to discontinue meeting with that particular agent. The Debtor also intimates that even though cooperation resumed between the parties, that he relied on his attorney, with whom he provided all the documents which he was authorized to possess, to give the same to the revenue agent.

Based on the foregoing, the Debtor contends first that with respect to the 1978 and 1979 tax return, the Government is estopped to assert that the returns were fraudulent inasmuch as they were 870 forms which were prepared by the Revenue agent. Therefore, the Debtor contends that the only issues remaining are 1) whether or not his 1977 return was fraudulent and 2) whether or not, with respect to the 1978 and 1979 returns, the Debtor willfully attempted to evade or defeat the respective tax liabilities.

The sole issue before this Court is whether the Debtor's federal income tax liabilities for the years 1977, 1978 and 1979 are excepted from discharge pursuant to § 523(a)(1)(C) of the Bankruptcy Code which provides in pertinent part:

§ 523. EXCEPTIONS TO DISCHARGE.

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

. . . .

(C) with respect to which the debtor made a false return or willfully attempted in any manner to evade or defeat such tax.

This Section provides two alternative grounds upon which a debtor's tax liability may be declared nondischargeable. The first is where the debt is for a tax with respect to which the debtor made a fraudulent return. The second is where the debt is for a tax with respect to which the debtor willfully attempted in any manner to evade or defeat such tax.

▪ It is important to note at this point that this Court is persuaded by the Debtor's contention that since the returns for the years 1978 and 1979 were prepared by an agent of the Government by use of assessments derived at by the agent of the Government, the Government is now estopped to argue that these returns were fraudulent. Thus, to clarify, the issues to be resolved by this Court are (1) whether the Debtor's 1977 tax return was fraudulent or whether the Debtor attempted to evade or defeat his tax liabilities for the years 1978 and 1979.

An analysis of these issues shall be taken in chronological order. Specifically, this Court shall first consider whether the Debtor's 1977 return was a fraudulent return within the meaning of § 523(a)(1)(C) so as to be declared a nondischargeable obligation. If the resolution of that issue is in the affirmative, then it shall not be necessary for this Court to consider whether the Debtor willfully attempted to evade or defeat such taxes for the year 1977.

▪ To establish that a return was fraudulent within the meaning of § 523(a)(1)(C) of the Bankruptcy Code, the showing of fraud is the same as that required for the imposition of the civil fraud penalty pursuant to 26 U.S.C. § 6653(b). *In re Kirk*, 98 B.R. 51 (Bkrtcy.M.D.Fla. 1989) (Baynes, J.) The measure of proof to establish fraud in this context is by clear and convincing evidence. *Korecky v. Commissioner*, 781 F.2d 1566, 1568 (11th Cir. 1986). To prove fraud, the Government must show that the taxpayer acted with specific intent to evade a tax believed to be owing. *Korecky v. Commissioner, supra*, at 1568. *Marcus v. Commissioner*, 70 T.C. 562 (1978), *aff'd*, 621 F.2d 439 (5th Cir. 1980). In order for a court to make a determination of whether fraud exists, the Court must consider the entire record and after a survey of the taxpayer's entire course of conduct. *Patton v. Commissioner*, 799 F.2d 166, 171 (5th Cir.1986). Since direct evidence of fraud is seldom demonstrated, fraud may be established by circumstantial evidence and certain indicia of fraud have been considered as evidence upon which the inference of fraudulent intent may be drawn and fraud found to exist. *Toussaint v. Commissioner*, 743 F.2d 309, 312 (5th Cir.1984). One factor to be considered is an understatement of income substantial in amount compared to the amount actually reported is considered significant factor. *Merritt v. Commissioner*, 301 F.2d 484, 487 (5th Cir.1962).

▪ This Court is without a doubt that the 1977 return, which the Debtor filed and which stated the Debtor's adjusted gross to be $2,310.00, was, in fact, a significant understatement of $278,803.00 which is the amount of adjusted gross income for 1977 which Debtor came forward with in September 1979 when he learned of the possibility of lenient treatment by the Government for delinquent taxpayers. The Debtor's contention that fraud implies deceit and deception, and that fraud cannot be found, whereas here the Debtor alerted the Government of his omission of income on his return is not persuasive in light of the facts in the present case. From the totali-

ty of the circumstances, i.e., Debtor's creation of shell corporations to carry on a mail fraud scheme, his gross understatement of his adjusted gross income for the year 1977 and his "coming clean" two years later only after learning of the Government's offer of leniency, this Court can infer that the Debtor acted with respect to his 1977 return and attempted to evade the tax liabilities associated with that return. Therefore, this Court is satisfied that the liability with respect to that taxable year, which amount or validity is not challenged by the Debtor, should be declared nondischargeable pursuant to § 523(a)(1)(C) of the Bankruptcy Code.

■ This leaves for consideration the issue of whether or not the Debtor willfully attempted to evade or defeat his tax liabilities with respect to the years 1978 and 1979. As mentioned earlier, it is undisputed that the Debtor did not file 1040 Forms but consented to the amounts assessed by the Revenue agent for those years. The Debtor contends that his contacting the Government, his admissions to the Revenue agent that he set up these shell corporations and his subsequent consent to the tax assessments made by the Revenue agent negates any inference of willful evasion contended by the Government. In addition, the Debtor contends, and this Court is in agreement, that the fact that he was convicted of a mail fraud scheme in connection with the diet pill scheme alone cannot support a conclusion that the Debtor's actions were with a specific intent to evade or defeat his taxes. This is so because, while the Debtor may have violated the federal postal statutes, there is hardly any question that he operated this diet pill business to make a lot of money and not for the purpose of evading income taxes. However, this is not the only evidence relied on to support its claim of nondischargeability based upon § 523(a)(1)(C) of the Bankruptcy Code. The Government introduced into evidence the testimony of the Revenue agent assigned to the Debtor. The agent testified that the Debtor consented to the assessments only after she had arrived at them based upon documents she received from financial institutions which handled the various checking accounts of the shell corporations. In fact, the only helpful information supplied by the Debtor to the agent in order for her to make accurate assessments, was his confirmation that the corporations were, in fact, shell corporations from which he derived large sums of monies.

■ Based on the foregoing, this Court is satisfied that the evidence presented establishes by the clear and convincing standard that the Debtor willfully attempted to evade or defeat his 1978 and 1979 income taxes. The record is replete with the Debtor's intent to evade his taxes. The Debtor's substantial understatement of his income, his failure to keep records of income, his conviction for mail fraud, his schemes to conceal his income and assets and his lack of cooperation with the Internal Revenue Services are all indicative of the Debtor's attempt to evade or defeat taxes. For these reasons, this Court is satisfied that the Debtor's tax liabilities for the years 1978 and 1979 are nondischargeable debts pursuant to § 523(a)(1)(C) of the Bankruptcy Code.

A separate Final Judgment shall be entered in accordance with the foregoing.