**In re Floyd BINKLEY and Elizabeth Binkley, Debtors.**

**Floyd BINKLEY and Elizabeth Binkley, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 92–05308–3P7.**
**Adv. No. 92–27787.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 3, 1994.

---

Ronald Cutler, Miami, FL, for debtors/plaintiffs.

Philip A. Doyle, Washington, DC, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This adversary proceeding is before the Court upon a complaint filed by debtors, Floyd and Elizabeth Binkley, to determine the dischargeability of tax debts for the years 1979 through 1989. A trial regarding this issue was held on June 21, 1994. After hearing the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The Plaintiffs seek a determination that their federal income tax liabilities for the years 1979 through 1989 are dischargeable in bankruptcy and are not excepted by operation of 11 U.S.C. § 523 from the discharge that has already been entered in this case. The parties stipulated to certain facts on the record at trial. (Tr. at 6–7). They are:

1) That the Plaintiffs do not owe any federal income taxes for 1987 or 1988. The taxes for 1987 and 1988 have been paid in full.

2) The Plaintiff, Elizabeth Binkley, is not liable for federal income taxes for 1979 because she was not married to Floyd Binkley during that time period. The federal income tax liabilities for 1979 are solely owed by Plaintiff, Floyd Binkley.

3) The Plaintiffs' 1989 federal income tax liabilities are excepted by operation of 11 U.S.C. §§ 523(a)(1)(A) and 507(A)(7)(A)(i) from any discharge granted to the debtors, because the Plaintiffs' federal income tax return for 1989 was due to be filed within three years of their bankruptcy petition.

4) The Plaintiffs' federal income tax liabilities for 1979 through 1986 are dischargeable, unless this Court determines that the exception to discharge contained in 11 U.S.C. § 523(a)(1)(C) applies.

The plaintiffs in this case are a husband and wife who were married in 1980. The testimony at trial was that for the period of ten years prior to their bankruptcy filing, they were consistently late in filing tax returns for each of those years. In fact, returns for some years were not filed at all, until the plaintiffs were contacted by the Internal Revenue Service and forced to file their returns. There are tax debts that are owed for a majority of those ten years.

According to testimony at the trial, the Plaintiffs filed their federal income tax returns for the years 1979 through 1986 only after the Internal Revenue Service contacted the Plaintiffs and informed them that they must file their returns. (Tr. at 12–15). On at least two occasions, in 1984 and in 1987, the Internal Revenue Service contacted the Plaintiffs and required them to file three delinquent returns for each of the preceding years. In 1984, the Plaintiffs were called into the office of the Internal Revenue Service and required to file their returns for 1981, 1982, and 1983. In 1987, the Plaintiffs were called into the office of the Internal Revenue Service and required to file their returns for 1984, 1985, and 1986.

Mr. Binkley testified that he was aware throughout the relevant period that the federal income tax returns were required to be filed, and that he was liable to the United States for income taxes. (Tr. at 39). He testified that he deliberately failed to file the federal income tax returns for the years 1979 through 1986 in a timely manner because he was afraid of the Internal Revenue Service, and believed he did not have the funds to pay the liabilities. (Tr. at 13). He further testified that he believed that he would be able "to catch up" the tax delinquencies and did not intend to avoid the payment of his taxes, (Tr. at 19).

During 1981, the Plaintiffs deposited $3,000.00 in a joint bank account. The following day, those funds were seized by the Internal Revenue Service. (Tr. at 22). Mr. Binkley testified that the Plaintiffs ceased using bank accounts until 1987, (Tr. at 50), and operated on a strictly cash basis. He claimed the reason for this was that he and his wife never again had a large enough amount of money to warrant opening another checking account. (Tr. at 22).

Mrs. Binkley testified that she relied entirely on her husband to prepare and file their joint federal income tax returns. (Tr.

at 52–53). She did testify that she discussed the non-filing of tax returns with her husband, but relied on him to file and pay the taxes. (Tr. at 58–59). She also testified that she was unaware that she had the option of filing separate federal income tax returns. (Tr. at 59). During the relevant period of time, Mrs. Binkley was employed from time to time in various jobs. Her employers always withheld income taxes from her wages. (Tr. at 52, 55).

From 1979 through 1984, Mr. Binkley's sole occupation was as a framing construction contractor. This entailed obtaining jobs from general contractors to construct the wooden frames of buildings. Mr. Binkley would hire other individuals to assist him in the construction. Upon completion, the general contractor would pay Mr. Binkley with a check for his work. Mr. Binkley would go to the general contractor's bank, cash the check, and pay his helpers in cash, retaining the remaining cash for his family's personal use. (Tr. at 23–24).

Mr. Binkley did not maintain a business bank account. He conducted his business by cash transactions, including the cash purchase of equipment and supplies, in addition to the cash payments to assistants. He testified that he maintained "very poor records" of his business transactions. Nevertheless, Mr. Binkley claimed deductions for his business expenses on his federal income tax returns for the years at issue. (Tr. at 24–25).

During 1985 and 1986, Mr. Binkley changed his line of work and was employed as a real estate sales person. His income taxes were not withheld from his pay during 1985 and 1986 and he failed to file timely returns for those years. (Tr. at 43). In 1989, Mr. Binkley returned to the business of framing construction contractor. He did not have an employer to withhold his income taxes from his earnings for 1989. (Tr. at 48–49).

The cumulative implication of Mr. Binkley's testimony was that for any year that he was responsible for paying his own taxes, they were not paid; the only years for which his federal income taxes were fully paid, 1987 and 1988, were those in which taxes were withheld from his earnings by an employer.

(Tr. at 48). He testified that he did not earn substantially more in 1987 and 1988 than he had in other years, and that he had managed nonetheless to maintain his household, even after the taxes were withheld from his paycheck. (Tr. at 49).

In 1986, the Binkleys purchased a home, putting down $1,000.00 in cash as a down payment. The home was eventually lost by foreclosure. (Tr. at 46).

There are several years in which the Binkleys' returns contained irregularities. On their 1982 federal income tax return the Plaintiffs deducted the full cost of a piece of business equipment, an air compressor and nail gun, in the amount of $1,140.00, although Mr. Binkley testified that in retrospect he knew the item should have been depreciated. (Tr. at 32–33).

There are also several irregularities on the Plaintiffs' 1984 income tax return. On their 1981 and 1982 income tax returns, the Plaintiffs reported self-employment taxes on the income earned through Mr. Binkley's framing business. Although he did the same work in 1984, they did not report self-employment taxes on their return for 1984. Although the Plaintiffs' properly included a Schedule C [Profit (or Loss) from Business or Profession] with their 1981 and 1982 federal income tax returns, they did not do so with their 1984 return. (Tr. at 38–39). Deductions for Mr. Binkley's business costs for 1984 were reported as "employee business expenses" in the amount of $41,015. Mr. Binkley testified that these expenses were solely for payments made to assistants in the contracting business, for which Mr. Binkley admitted his records were very poorly kept. (Tr. at 41).

Additionally, the plaintiffs failed to report Mrs. Binkley's income on the 1984 return for that year. Mr. Binkley testified that this omission was made because of the upheaval that was caused by the death of his father and his attempt to change his line of work during that time. He further testified that he probably lost his wife's W–2 for 1984. (Tr. at 14–15). Also on the 1984 return, the Plaintiffs claimed a deduction for transportation and lodging with respect to medical and

dental expenses in the amount of $2,941. Mr. Binkley testified that there were no extraordinary medical expenses incurred by his family that year, but instead the deduction represented car and truck expenses associated with his framing business. (Tr. at 41).

## CONCLUSIONS OF LAW

■ The Plaintiffs' 1989 federal income tax liabilities are excepted by operation of 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(7)(A)(i) from any discharge granted to the debtors pursuant to 11 U.S.C. § 727. Pursuant to this Court's oral ruling at the trial held on June 21, 1994, the tax liabilities at issue are not excepted from the discharge granted to Mrs. Binkley. In regards to Mr. Binkley's federal income tax liabilities for 1979 through 1986, these liabilities are dischargeable, unless they fall within the exception to discharge set forth in 11 U.S.C. § 523(a)(1)(C). As stated previously, the Plaintiffs' tax liabilities for the years 1987 and 1988 are paid in full, and are not the subject of this suit.

■ Section 523(a)(1)(C) excepts from discharge any tax debt "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." The burden of establishing that the plaintiffs' tax liabilities are excepted from discharge falls on the government. *In re Kirk*, 98 B.R. 51 (Bankr.M.D.Fla.1989); *In re Fernandez*, 112 B.R. 888 (Bankr.N.D.Ohio 1990). The United States must prove by a preponderance of the evidence that § 523(a)(1)(C) applies to the liabilities at issue. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Thus, the IRS will meet its burden if it shows that it is more probable than not that Mr. Binkley willfully attempted to evade his taxes.

■ Section 523(a)(1)(C) is to be read in the disjunctive; the United States must show *either* that the return for a given year was fraudulent, *or* that the plaintiffs willfully attempted to evade or defeat the tax for that year. *In re Gilder*, 122 B.R. 593 (Bankr. M.D.Fla.1990); *Lilley v. Internal Revenue Service (In re Lilley)*, 152 B.R. 715 (Bankr. E.D.Pa.1993).

One of the primary issues in cases dealing with § 523(a)(1)(C) has been what standard the court should apply to the word "willfulness" in the provision. The courts are split on this issue; indeed even the courts within the Middle District have come to opposite conclusions. Some courts have applied the criminal standard of willfulness, which requires the government to present evidence that the debtor engaged in the willful commission of an act to evade or defeat his tax liability. See *Howard v. United States (In re Howard)*, 167 B.R. 684 (Bankr.M.D.Fla. 1994); *Gathwright v. United States (In re Gathwright)*, 102 B.R. 211 (Bankr.D.Or. 1989). The great majority of cases construe this language differently, giving the phrase "willfully attempted in any manner to evade or defeat" a broader reading than the two courts cited above. See *In re Gilder*, 122 B.R. 593 (Bankr.M.D.Fla.1990); *In re Toti*, 24 F.3d 806 (6th Cir.1994).

The majority of courts have applied the same standard to this provision as used in the civil tax fraud cases under 26 U.S.C. § 6653(b) (IRC 1954). The civil tax fraud penalty under § 6653(b) requires a specific intent to evade a tax believed to be owing. See, *Webb v. Commissioner*, 394 F.2d 366, 377 (5th Cir.1968); *In re Kirk*, 98 B.R. 51, 54 (Bankr.M.D.Fla.1989); *Habersham–Bey v. Commissioner*, 78 T.C. 304, 311 (1982). Thus, proof of a debtor's conduct with the specific intent to evade a tax believed to be owing which would be sufficient to sustain a finding of civil tax fraud under 26 U.S.C. § 6653(b) is sufficient as proof of a willful attempt to evade a tax for purpose of § 523(a)(1)(C). There is no requirement that the debtor commit a fraudulent act in order to make an attempt to evade a tax. *Toti*, 24 F.3d at 809. Instead, as the District Court in *Toti* held, where the debtor is financially able to pay the taxes due, but chooses not to do so, the government has met its burden of proof. *United States v. Toti*, 149 B.R. 829, 834 (E.D.Mich.1993). The civil standard as applied to § 523(a)(1)(C) does not require a commission; a voluntary, conscious omission is sufficient.

The Court notes that in each of their Proposed Findings of Fact and Conclusions of

Law submitted to the court, both parties agree that the lesser civil standard applies in this case, even though this is not the definitive rule in the Middle District. Since the parties agree on the standard, the Court is forced to apply the same standard to the word "willfully" in § 523(a)(1)(C) as used in civil tax fraud cases. In order for the Court to find the taxes for the relevant years not dischargeable in the case at bar, the court merely must find that the debtor acted with specific intent to evade a tax believed to be owing.

█ The language used in § 523(a)(1)(C) states that taxes are nondischargeable for which the debtor "willfully attempted in any manner to evade or defeat such tax...." The phrase "in any manner," is employed by Congress to broaden the statute's application, and it includes attempts to evade the payment of tax. *In re Jones,* 116 B.R. 810, 813 (Bankr.D.Kan.1990). Actions taken to avoid the assessment of tax are among the actions that constitute an attempt to evade or defeat a tax. *Sansone v. United States,* 380 U.S. 343, 354, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965).

█ "Direct proof of a debtor's intent to evade tax obligations is usually unavailable. Thus, intent to evade taxes is generally provable by circumstantial evidence and reasonable inferences drawn from the existence of certain fact patterns, otherwise called badges of fraud.... In the income tax area, badges of fraud include significant understatements of income made repeatedly; failure to file tax returns; repeatedly filing returns late; implausible or inconsistent behavior by the taxpayer; and failure to cooperate with federal tax authorities." *Berzon v. United States,* 145 B.R. 247, 250 (Bankr.N.D.Ill.1992).

These conclusions of law as applied to the facts of the case at bar indicate that the taxes owed for the relevant years are excepted from the discharge granted in the bankruptcy case pursuant to § 523(a)(1)(C). Floyd Binkley's testimony that he deliberately failed to file tax returns for 1979 through 1986 until the Internal Revenue Service called him into its offices, even though he knew he had a duty to do so, is sufficient to establish a willful attempt to evade or defeat the tax liabilities in question.

Mr. Binkley's failure voluntarily to pay his tax liabilities whenever the taxes were not withheld from his wages, even though he was able to maintain his household during 1987 and 1988 and pay his tax liabilities for 1987 and 1988, when his employer did withhold income taxes from his earnings, reflects a willful attempt to evade or defeat the taxes in question. The fact that he was able to maintain his household even after the taxes had been withheld from his paycheck during those two years, even though he testified that he did not earn substantially more those two years, is sufficient proof that Mr. Binkley was financially able to pay his taxes. Additionally, Mr. Binkley's practice of transacting all business in cash and avoiding the use of banks after the seizure of funds in 1981, reflects a willful attempt to evade or defeat the payment of the taxes in question.

Significant badges of fraud exist with regard to plaintiffs' 1984 federal income tax return. The 1984 return was filed late, and only after the IRS called the Binkleys into their offices and required them to file the return. Income was omitted from the return, and large, questionable deductions were claimed for which the plaintiffs maintained inadequate records. The plaintiffs transacted all business in cash after a seizure of funds in 1981. The plaintiffs failed to report self-employment taxes, even though they reported it in prior years and thus were aware of the necessity of doing so. These badges of fraud are sufficient to establish that the plaintiffs' 1984 federal income tax return was fraudulent.

It is this Court's opinion that Mr. Binkley willfully attempted to evade or defeat his tax liabilities for 1979 through 1986, and those liabilities are therefore excepted from discharge. A separate final judgment will be entered in accordance with the foregoing.