**In the Matter of Buford R. BURGESS and Dorothy Burgess, Debtors.**

**Buford R. BURGESS and Dorothy Burgess, Plaintiffs,**

v.

**UNITED STATES of America and State of Alabama, Defendants.**

Bankruptcy No. 95–81659.
Adv. No. 95–80231.

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

June 7, 1996.

202

Garland C. Hall, III, Decatur, AL, for Debtors/Plaintiffs.

Cynthia Lewis Stier, Washington, DC, for Defendants.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

This matter is before the Court on the complaint of Buford and Dorothy Burgess (hereinafter the "debtors"), seeking a determination of dischargeability of certain income tax obligations owed to the United States of America (hereinafter the "United States") and the State of Alabama for the tax years of 1985, 1986, 1987, and 1988.[1] The trial in this matter was held on the 2nd day of May, 1996. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1).

In their complaint, debtors allege that their income tax obligations for the years 1985 through 1988 are dischargeable pursuant to 11 U.S.C. § 727 of the United States Bankruptcy Code (hereinafter the "Bankruptcy Code"). The United States asserts that the subject indebtedness is excepted from discharge by operation of 11 U.S.C. § 523(a)(1)(C) of the Bankruptcy Code. However, in open Court the United States conceded that the penalties and penalty interest on the subject indebtedness are not excepted from discharge. The United States further conceded the issue of dischargeability with regard to the plaintiff/debtor, Dorothy Burgess, for the tax years 1985 through 1988. Accordingly, the sole issue before this Court is whether plaintiff/debtor, Buford Burgess (hereinafter "Burgess"), "made a fraudulent return or willfully attempted in any manner to evade or defeat" the subject taxes within the meaning of 11 U.S.C. § 523(a)(1)(C).

Upon due consideration of the evidence presented at trial, arguments of counsel, and

---

1. Upon debtors' Motion for Judgment on the Pleadings, the Court entered an Order, dated May 2, 1996, granting debtors' motion with regard to the State of Alabama, Department of Revenue. Accordingly, the United States of America is the sole defendant subject to this Memorandum Opinion and corresponding Judgment.

the documents submitted in support thereof, the Court makes the following findings of facts and conclusions of law.[2]

## I. FINDINGS OF FACT

Burgess served as Sheriff of Morgan County, Alabama, from 1981 until 1991. During his tenure as sheriff, Burgess was responsible for feeding the prisoners of Morgan County. The State of Alabama and various municipalities paid Burgess a per diem for each prisoner from which Burgess purchased the prisoners' food. At the end of each month, Burgess received all excess funds not expended for the purchase of the prisoners' food in consideration for providing this service.

Although Burgess was ultimately responsible for the prisoner food program, he depended upon two bookkeepers, Joy Ellis ("Ellis") and Susan Ann Patterson ("Patterson"), to manage the financial aspects involved therewith. Ellis began working for the Morgan County Sheriff's Department in 1971, and worked specifically for Burgess as his Chief Clerk from 1981 until August of 1986. According to Ellis, a bank account, commonly referred to as the "Food Account", was established to facilitate the financial aspects of the prisoner food program. Ellis maintained all receipts and deposits associated with the Food Account.

Ellis was also responsible for compiling and providing all of the documents associated with the Food Account to the accounting firm of Alford, McKenzie and Breeden. At the direction of Paul Alford ("Alford"), Ellis provided the accounting firm with the following documents on a monthly basis:

1. Invoices;
2. Checkbook;
3. Account Statements (including canceled checks); and
4. Deposit Slips.

Alford personally supervised the preparation of debtors' tax returns for the years 1980 through 1985. After the returns were prepared each year, Alford would review the returns before notifying Burgess of their completion.

Debtors' source of income for the 1985, 1986, 1987 and 1988 tax years included their respective salaries as sheriff and a drivers license examiner, farm income, and income from the prisoner food program. In addition, debtors operated two Sneaky Pete restaurants during 1988. Debtors' farm operations and restaurant ventures generated negative gross income during the relevant tax years. Debtors disclosed the income generated by their farm, restaurants, and prisoner food program on Schedule C of their tax returns.

Alford indicated that the prisoner food program generated a profit prior to the 1985 tax year. Upon reviewing debtors' 1985 tax return, Alford became concerned when he discovered that his staff accountants had calculated a negative gross income for the prisoner food program. Alford contacted Ellis to verify the figures, and "backed-out" approximately $10,971.00 of debtors' personal expenses to establish a profit of $2,334.00 for the 1985 tax year.

Alford noted that the nature of the documents provided to his firm to calculate the income generated by the prisoner food program changed the last year that he prepared debtors' tax returns. According to Alford, Burgess' office began to provide the accounting firm only with invoices and mere photocopies of the checks remitted to Burgess rather than the above described documents. Moreover, the information was provided on a quarterly, rather than monthly basis. Alford also testified that the fee for preparing debtors' tax returns decreased in proportion to the decrease in services provided to debtors by the accounting firm.

When Ellis retired in August of 1986, Patterson became the Chief Clerk for Burgess. During this transition period, George Breeden, a partner of the Alford, McKenzie and Breeden accounting firm, began to personally supervise the preparation of debtors' tax re-

---

2. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

turns. Breeden prepared debtors' 1986, 1987, and 1988 returns.

Breeden substantiated the testimony of Alford regarding the nature of the documents provided to the accounting firm to prepare debtors' tax returns with regard to the prisoner food program by explaining that he prepared Schedule C by referring merely to invoices associated with and photocopies of checks issued to Burgess from the Food Account.[3] Apparently, Breeden classified the checks as gross income and subtracted the invoices therefrom to arrive at net income for the food program for the 1986, 1987, and 1988 tax years. In actuality, however, the checks written to Burgess constituted net rather than gross income for said tax years. Under this methodology, the expenses associated with the prisoner food account appeared to exceed receipts during each of the relevant years. Because a negative gross profit was highly unusual, Breeden contacted Patterson to verify each loss, but was informed by Patterson that the program was generating a small profit each year. Breeden admitted that he never discussed the reoccurring problem with Burgess. After each conversation with Patterson, Breeden subtracted duplicate invoices and debtors' personal expenditures from the invoice total to arrive at a small profit.

The Internal Revenue Service audited the debtors' 1985, 1986, 1987 and 1988 tax returns, and discovered that debtors substantially under-reported the income generated by the prisoner food program as follows:

| TAX YEAR | REPORTED INCOME | ACTUAL INCOME | UNREPT'D INCOME |
|---|---|---|---|
| 1985 | $2,334 | $ 34,733 | $ 32,399 |
| 1986 | 2,302 | 29,165 | 26,863 |
| 1987 | 1,677 | 35,791 | 34,114 |
| 1988 | 949 | 43,198 | 42,249 |
| Total | $7,262 | $142,887 | $135,625 |

As a result, the U.S. Attorney's Office filed criminal and civil actions against the debtors, but eventually elected to dismiss the criminal action. In partial settlement of the civil action, debtors agreed to the tax liabilities assessed by the Internal Revenue Service for the 1986, 1987, and 1988 tax years. At the conclusion of a trial before the Tax Court, the debtors further agreed to a finding of liability for unreported income from the prisoner food program, and the United States conceded the civil fraud penalty for the 1985 tax year. Said agreement was memorialized in a stipulated decision which was presented to the Tax Court.[4]

## II. CONCLUSIONS OF LAW

Based upon the foregoing, the United States asserts that grounds exist for denying the discharge of debtors' tax obligations for the 1985 through 1988 tax years pursuant to section 523(a)(1)(C) of the Bankruptcy Code which provides in pertinent part that:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty—
>
> (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

Upon the evidence presented and for the reasons stated below, the Court finds that debtors' tax obligations for the years 1985 through 1988 are not excepted from discharge by operation of 11 U.S.C. § 523(a)(1)(C) of the Bankruptcy Code, and are due to be discharged pursuant to 11 U.S.C. § 727 of the Bankruptcy Code whereby:

> 1. The United States failed to prove that debtors made a fraudulent return or willfully attempted in any manner to

---

3. It is interesting to note that, in contradiction to the testimony of Breeden and Alford, Patterson testified that she provided the accounting firm with all invoices, receipts, canceled checks, and account statements on a quarterly basis.

4. The stipulated Tax Court decision in which the United States conceded the civil fraud penalty for

the 1985 tax year does not constitute res judicata nor collateral estoppel against determining whether debtors' liability for the 1985 tax debt is non-dischargeable wherein the Tax Court did not make a specific finding concerning the issue of fraud. *Berkery v. Commissioner (In re Berkery),* 192 B.R. 835 (Bankr.E.D.Pa.1996).

evade or defeat the subject indebtedness by under-reporting their income for 1985, 1986, 1987, and 1988.

2. Debtors failure to accurately report the subject income merely resulted from an accounting error of which there is simply no evidence that debtors were aware.

3. Debtors admit that they under-reported income generated by the prisoner food program. Nevertheless, debtors were involved in a variety of business ventures, and were conceivably unaware that the prisoner food program income for the relevant years was substantially understated due to the losses generated by the other ventures in which debtors were involved.

■ Subject to certain exceptions expressly enumerated in the Bankruptcy Code, the purpose of the Code is to provide honest but financially distressed debtors with a fresh start. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It is well established that exceptions to discharge are to be construed narrowly against creditors, and must not be allowed to swallow the general rule favoring discharge. *Williams v. United States (In re Williams)*, 164 B.R. 352 (Bankr.M.D.Fla.1994).

■ In order to establish that the subject debt is non-dischargeable, the United States has the burden of proving each element of section 523(a)(1)(C) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Under the preponderance of the evidence standard, the United States must prove that it is more probable than not that the debtors filed a fraudulent tax return or that the debtors willfully attempted to evade the subject tax debt. A lack of proof as to any element will be fatal to their claim.

■ Section 523(a)(1)(C) provides two alternative grounds upon which a debtor's tax obligations may be declared non-dischargeable. The first occurs where the subject debt is for a tax with respect to which the debtor filed a fraudulent tax return. The second is "where the debt is for a tax with respect to which the debtor willfully attempted in any manner to evade or defeat such tax." *Carapella v. United States (In re Carapella)*, 105 B.R. 86, 88 (Bankr.M.D.Fla.1989). Accordingly, a debtor's discharge may be denied even in the absence of a false tax return under section 523(a)(1)(C).

■ The standards for proving fraud and willfulness are not the same under section 523(a)(1)(C). *In re Berkery*, 192 B.R. at 839 (citing *Lilley v. Internal Revenue Service (In re Lilley)*, 152 B.R. 715 (Bankr.E.D.Pa. 1993)). The Court in *In re Lilley*, explained that "[t]he two disjunctive circumstances referenced in section 523(a)(1)(C) are not the same unless a court is willing to equate the elements of a 'willful attempt' at evasion with 'fraud.'" *In re Lilley*, 152 B.R. at 720–21. The court in *Lilley* further explained that the first prong of section 523(a)(1)(C) "is directed solely at 'tax cheats,' while ... the second prong is also directed at 'tax protestors.'" *Id.*

In the recent case of *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153, 1158–59 (11th Cir.1995), the Eleventh Circuit also recognized that Congress did not consider the standard for the disjunctive provisions to be identical. The Eleventh Circuit relied upon analogous provisions of the Internal Revenue Code to analyze section 523(a)(1)(C), and found in conclusion that:

[S]ection 7201 (of the Internal Revenue Code) makes it a felony for any person to 'willfully attempt[ ] in any manner to evade or defeat any tax imposed by this title or the payment thereof.' § 7201. At the same time as it enacted section 7201, Congress also enacted I.R.C. § 7207, which makes it a misdemeanor for any person to 'willfully deliver[ ] or disclose[ ] to the Secretary any ... return ... known by him to be fraudulent or to be false as to any material matter.' § 7207. Since Congress purposely devoted separate sections of the I.R.C. to penalize evasion of a tax or payment thereof and to penalize filing a fraudulent return, it clearly did not consider the scope or effect of these two provisions to be identical. Mindful of the different judicial interpretations of sections 7201 and 7207, Congress evidently chose to proscribe only selected elements of the con-

duct described in each provision when drafting section 523(a)(1)(C).

In construing the first prong of section 523(a)(1)(C), courts have consistently applied the civil fraud penalty standard under which "a showing of 'evil motive or sinister purpose'" is not required. *In re Berkery*, 192 B.R. at 841; *In re Carapella*, 105 B.R. 86 (Bankr.M.D.Fla.1989). The existence of fraud is a factual question which is to be determined from the totality of the circumstances. *Rivers v. United States (In re Rivers)*, 178 B.R. 9, 11 (Bankr.S.D.Ala.1994). The primary issue under the first prong "is whether the debtor underpaid his taxes, knew that his tax returns were false and intended to evade his taxes." *Id.*

Because direct proof of a debtor's intent is generally unavailable, courts commonly look for the indicia of certain "badges of fraud." *Binkley v. United States (In re Binkley)*, 176 B.R. 260 (Bankr.M.D.Fla.1994). Such badges of fraud include repeated understatements of income; failure to file tax returns; repeated late filed returns; implausible conduct; failure to keep adequate records; concealment of assets; failure to cooperate; and the debtor's sophistication. *In re Berkery*, 192 B.R. at 841.

Virtually every case which addresses this issue involves a debtor who took some action in addition to merely under-reporting taxable income. *See In re Berkery*, 192 B.R. at 842 (finding tax debt to be non-dischargeable where debtor substantially under-reported taxable income generated by illegal business activities, and debtor attempted to evade authorities following his indictment); *In re Carapella*, 105 B.R. at 89 (finding that debtor filed a fraudulent tax return where debtor grossly under-reported his adjusted gross income, and created a shell corporation for the principal purpose of committing mail fraud).

While it is undisputed in the present case that the debtors under-reported the income generated by the prisoner food program, there is nothing in the record to indicate that the debtors were aware of the accounting error which precipitated the debtors' tax problems. The United States proffered no evidence that debtors failed to file or repeatedly filed late tax returns, nor that debtor's failed to keep adequate tax records, attempted to conceal assets, or refused to cooperate with the Internal Revenue Service. Accordingly, this Court finds that the United States failed to prove that it is more probable than not that the debtors filed a fraudulent tax return within the meaning of section 523(a)(1)(C) of the Bankruptcy Code.

With regard to the second prong of section 523(a)(1)(C), the Court further finds that the United States failed to prove that debtors willfully attempted to evade the subject taxes. Considerable controversy exists regarding the proper interpretation of the second prong of section 523(a)(1)(C). The controversy stems from the fact that the language of section 523(a)(1)(C) is similar to both criminal and civil provisions of the Internal Revenue Code. The majority of courts have adopted the civil standard of willfulness under which the term means voluntary, conscious, and intentional. *See Toti v. United States (In re Toti)*, 24 F.3d 806, 809 (6th Cir.1994). The Eleventh Circuit, however, recently compared the second prong of section 523(a)(1)(C) to the more restrictive criminal standard of willfulness in the case of *In re Haas*, 48 F.3d at 1157, under which the debtor must commit an affirmative act calculated to defraud the government.

In the case of *In re Haas*, the Eleventh Circuit determined that the knowing failure to pay one's tax obligation does not, without more, except from discharge a debtor's tax obligation by operation of the second prong of section 523(a)(1)(C). In determining that Congress did not intend for a debtor's mere failure to pay his taxes to result in the non-dischargeability of such tax obligation, the Eleventh Circuit interpreted the second prong of section 523(a)(1)(c) by analyzing section 7201 of the Internal Revenue Code pursuant to which it is a felony for a person to willfully attempt to evade or defeat his tax liability or the payment thereof. Section 7201 deals with the requisite level of intent required to establish a willful evasion of taxes, and "places a high standard on the Government to establish willfulness by requiring evidence of an affirmative act to sustain a

conviction under a criminal statute." *Miller v. United States (In re Miller)* 176 B.R. 266 (Bankr.M.D.Fla.1994).

The United States contends that *In re Haas* is distinguishable from and inapplicable to the case at bar because the Eleventh Circuit limited its decision to the question of:

whether a debtor's failure to pay his taxes, without more, constitutes a 'willful[ ] attempt[ ] in any manner to evade or defeat such tax' under section 523(a)(1)(C).

Although the Court believes that the criminal standard of willfulness may very well be the applicable standard for this Circuit under the dictates of *In re Haas,* such determination is unnecessary because the Court specifically finds that the United States failed to carry its burden of proof and establish its claim under either standard.

The United States urges this Court to follow the decision of *Halburg v. United States (In re Halburg),* 177 B.R. 101 (Bankr. N.D.Ala.1995), *aff'd,* Civil Action No. 95–PT–1007–NE (N.D.Ala.1995), in which this Court held that the debtors willfully attempted to evade or defeat their income tax obligations where they under-reported their income by $85.000.00 over the course of a seven-year period. In that case, debtors substantially understated the income generated by Dr. Halburg's dental practice. In addition, debtors failed to report income generated by a substantial variety of ventures. Mrs Halburg testified that she received approximately $12,000.00 in unreported rental income, $9,300.00 in profit from the sale of real estate, and $5,000.00 from the sale of certain inherited property. Debtors also admitted that they failed to report certain interest income. The debtors alleged that they did not have the financial ability to satisfy their tax obligations for the years in question, but in direct contradiction to their allegation, debtors purchased a $300,000.00 home and certain penny stock for approximately $5,800.00. Debtors efforts to willfully evade or defeat their federal income tax obligations were apparent.

In austere contradiction to the *Halburg* case, Burgess merely failed to identify an error made by his accountants regarding one aspect of the debtors' tax returns. The United States presented no evidence to indicate that debtors inaccurately reported income generated by their additional business ventures. Likewise, no evidence was offered to establish that debtors engaged in a lavish lifestyle.

At the hearing, Burgess never denied the allegation that he under-reported the subject income, but testified instead that he relied upon and believed in his accountants and bookkeepers. This Court does not intend to create a precedent under which a taxpayer can blindly sign a grossly inaccurate income tax return under penalty of perjury, and claim innocence because he or she relied upon another party to accurately prepare said return. Nevertheless, in the case at bar the United States failed to set forth any evidence to establish that debtors caused a fraudulent tax return to be filed, nor that debtors willfully attempted in any manner to evade or defeat the subject taxes. The mere fact that debtors under-reported income, without more, does not permit a finding that debtors filed a fraudulent tax return nor that debtors willfully attempted to evade such tax. Accordingly, the claim of non-dischargeability cannot be sustained. The taxes owed by the debtors for the years of 1985, 1986, 1987, and 1988 are not excepted from discharge.

A separate final judgment will be entered in accordance with this opinion.