In re Abraham ZIMMERMAN and Marilyn R. Zimmerman, Debtors.

Abraham ZIMMERMAN and Marilyn R. Zimmerman, Plaintiffs,

v.

The UNITED STATES of America, Internal Revenue Service, Defendant.

Bankruptcy No. 92–2868–BKC–3F7. Adversary No. 96–0038.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 9, 1996.

Amending Order Dec. 11, 1996.

Robert Altman, Palatka, FL, Richard W. Epstein, Ft. Lauderdale, FL, for Plaintiffs.

Charles R. Wilson, U.S. Attorney, Jacksonville, FL, Bruce T. Russell, Washington, DC, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court upon a complaint filed by Plaintiffs to determine the dischargeability of debt. (Doc. 1). The Defendant filed an answer. (Doc. 12). A trial was held on October 10, 1996. Based upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Plaintiffs, Abraham Zimmerman and Marilyn R. Zimmerman, filed a voluntary joint petition under Chapter 7 on May 18, 1992. (*In re Abraham Zimmerman and Marilyn R. Zimmerman,* Case No. 92–2868–BKC–3F7, Doc. 1). The Zimmermans were indebted pre-petition to the Internal Revenue Ser-

vice ("Defendant") in the approximate amount of $1,177,121.33 for federal income taxes, statutory assessments, interest, and penalties for the tax years 1979–1983 and 1988 [1] ("Taxes"). The Zimmermans received their discharge from this Court on August 1, 1994. (Ex. A attached to Complaint, Doc. 1). On October 18, 1995, the Defendant delivered a Notice of Levy to the United States Social Security Administration and attempted to levy on Plaintiffs' Social Security benefits for the payment of the Taxes. (Ex. B attached to Complaint, Doc. 1). The Retirement, Survivors, and Disability Insurance Division for the United States Social Security Administration notified Plaintiffs that it intended to honor the levy, and the Insurance Division would deduct $849.50 from the Plaintiffs' monthly Social Security benefits. (Ex. C attached to Complaint, Doc. 1).

■ The Plaintiffs commenced this adversary proceeding on February 5, 1996. (Complaint, Doc. 1). Count I requests that this Court determine the dischargeability of the debt pursuant to 11 U.S.C. § 523(a)(1), alleging that the debt is dischargeable as the tax returns claiming these deductions were filed more than three (3) years prior to the filing of the Plaintiffs' Chapter 7 case. (Complaint at ¶ 13–16). Count II charges that the Defendant violated the Plaintiffs' discharge in violation of 11 U.S.C. § 524. (Complaint at ¶ 17–20). Count III sought injunctive relief, but was rendered moot once the Defendant discontinued its collection efforts after this Proceeding was initiated. (Complaint at ¶ 21–29).

The Defendant in its Answer (Doc. 12) alleges that the Plaintiffs willfully attempted to evade or defeat taxes and that the debt is excepted from the Plaintiff's discharge pursuant to 11 U.S.C. § 523(a)(1)(C). Defendant filed a Motion for Summary Judgment (Doc. 19), and the Plaintiffs filed a memorandum in opposition. (Doc. 25). Because the motion was filed merely a week before the Trial, the Court allowed the Trial to continue as scheduled as opposed to addressing the Motion for Summary Judgment at that time.

---

1. The issue of dischargeability of the taxes for the 1988 tax year is not before the Court as the

Defendant conceded to the dischargeability of that debt.

The parties introduced evidence and presented testimony. The parties stipulated that Marilyn Zimmerman is entitled to a discharge for the Taxes as no evidence existed that she willfully attempted to evade or defeat the Taxes. Therefore, the sole issue to be determined by this Court is the dischargeability of the Taxes for Mr. Zimmerman.

Mr. Zimmerman was an investor and promoter of coal mining tax shelters from 1979 to 1983. Mr. Zimmerman was the principal officer and co-owner of AMCOAL Energy Corporation, a general or managing partner in the tax shelters. Prior to each investment, Mr. Zimmerman hired geologists and engineers to assess the coal mining properties, to estimate the coal reserves, to test the quality of the coal, and to estimate development costs. Plaintiff also hired an accountant. Plaintiffs took tax deductions in the years 1979–1983 for the losses associated with the coal mining ventures.

Defendant through the use of Revenue Agent, Artist Becton, conducted an audit of the Plaintiffs' returns and the coal mining tax shelters for the tax years 1979–1981. Mr. Zimmerman provided Agent Becton with all relevant information and cooperated fully with the audit. At trial, both parties agreed that Mr. Zimmerman accurately reflected his income, did not keep a double set of books, did not destroy, conceal, or make false entries or alterations in his records, did not conceal assets or cover up sources of income, did not fail to report income, and did not give misleading or false information to Agent Becton.

Defendant hired Earl Hoover, a geologist, to assess the availability of coal on the properties. Mr. Hoover reported that coal did exist on the properties; however, a sufficient quantity of coal did not exist on the premises to justify development and mining of the properties. Upon the observation and data collected by Mr. Hoover, Agent Becton determined that the shelters lacked economic viability and were tax-motivated operations and recommended that the expenses and losses attributed to the shelters be disallowed.

The Plaintiffs challenged these findings in Tax Court in a test case, *Abraham Zimmerman and Marilyn Zimmerman v. Commissioner*, 54 T.C.M. (CCH) 927, 1987 WL 48830 (1987), where the Tax Court determined that the investments were made without a profit motive and executed solely for tax avoidance. *Id.* at 938. The Tax Court imposed a $5,000.00 tax penalty pursuant to 26 U.S.C. § 6673 finding the Plaintiff's "positions were frivolous and groundless and that these proceedings were instituted primarily for delay." *Id.* at 939.

### CONCLUSIONS OF LAW

■ The Plaintiffs assert that the Taxes owed to the Defendant were discharged on August 1, 1994. The Defendant contends that pursuant to 11 U.S.C. § 523(a)(1)(C) the Taxes should be excepted from the discharge as the Plaintiffs either filed a fraudulent return or willfully attempted to evade or defeat the Taxes.

■ Section 523(a)(1)(C) of Title 11 provides "(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—(1) for a tax or a customs duty—(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax...." 11 U.S.C. § 523(a)(1)(C). The Defendant must demonstrate by a preponderance of the evidence that the Plaintiff willfully attempted to evade or defeat a tax. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (holding all exceptions to discharge under § 523(a) must be proven by a preponderance of the evidence). Whether a debtor has willfully attempted to evade or defeat a tax is a question of fact that must be resolved by a consideration of the totality of the circumstances. *Spirito v. United States (In re Spirito)*, 198 B.R. 624, 629 (Bankr.M.D.Fla.1996); *United States v. Williams (In re Williams)*, 186 B.R. 521, 522 (M.D.Fla.1995).

■ In determining whether a debt is subject to discharge under 11 U.S.C. § 523(a)(1)(C), a court must inquire into the debtor's intent. In *Matter of Howard*, the bankruptcy court utilized the intent test derived from I.R.C. § 7201 as the standard for

willful evasion under section 523(a)(1)(C). 167 B.R. 684, 686 (Bankr.M.D.Fla.1994). Section 7201 of the I.R.C. requires, at a minimum, that willfulness be a "'voluntary, intentional violation of a known legal duty.'" *Id.* at 688 (quoting *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976)). This type of willfulness would not include acts that are made through "inadvertence, carelessness, or honest misunderstanding of what the law requires," but instead requires an affirmative act. *Id.* (citing *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943)). The Eleventh Circuit recently addressed the intent level required to be proven in order for a debt to be excepted from the discharge pursuant to 11 U.S.C. § 523(a)(1)(C). *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153 (11th Cir.1995). The *Haas* court found that a knowing failure to pay taxes, without more, is not a willful attempt to evade or defeat as required by the statute; an affirmative act is required, not mere nonpayment. *Id.* at 1158.

■ Due to the fact that direct evidence, such as affirmative acts to evade or defeat taxes, is rarely available to prove intent, courts also consider circumstantial factors of fraudulent activity. *See, e.g., Griffith v. United States (In re Griffith)*, 161 B.R. 727, 733 (Bankr.S.D.Fla.1993). The *Griffith* court considered what it called "badges of fraud" in addition to affirmative acts of fraud "to ascertain a state of mind." *Id.* at 734. The court found these "badges of fraud" to include:

(1) the recurrence of the understatement of income for more than one tax year; (2) the understatement of income; (3) implausible or inconsistent explanations of behavior; (4) inadequate records; (5) transfer of assets to a family member; (6) transfer for inadequate consideration; (7) transfer that greatly reduced assets subject to IRS execution; and (8) transfers were made in the face of serious financial difficulties.

*Id.* at 733.

■ The facts in this Proceeding are that Mr. Zimmerman set up coal mine operations throughout the years 1979–1983. Each one of these ventures failed economically. The Debtor took deductions for the losses in the tax years of 1979–1983. These actions by the Debtor, standing alone, do not convince the Court that the Debtor willfully attempted to evade or defeat taxes. At this juncture, the issue becomes whether Mr. Zimmerman's intent was to evade or defeat taxes because mere "poor judgment is not indicative of fraud or willful behavior." *Howard*, 167 B.R. at 689.

■ The facts demonstrate that Mr. Zimmerman did not rely merely on his own "judgment" as to the viability of the coal mines. Prior to the investments, the mines were inspected by a geology and engineering firm and accountant. These professionals provided Mr. Zimmerman with data concerning the viability of the mines. Mr. Zimmerman testified that he relied upon the representations of these individuals in setting up these mining operations and taking the deductions. Although evidence of reliance on a professional as to tax matters can be a defense to willful evasion, the Court finds that such reliance must be reasonable. *See, Carlen v. Department of the Treasury Internal Revenue Service (In re Carlen)*, 1991 WL 424977 at *23 (Bankr.N.D.Ind.1991); *Gathwright v. United States (In re Gathwright)*, 102 B.R. 211, 215 (Bankr.D.Or.1989); *Ferry v. Commissioner of Internal Revenue*, 1984 WL 14484 (U.S.Tax Ct.).

Prior to 1979, Mr. Zimmerman had no experience in coal mining. Therefore, it was reasonable for Mr. Zimmerman to engage professionals to assess and to review the viability of the coal mines. The Defendant, itself, hired its own geologist, Mr. Hoover, to assess the mine, and Mr. Hoover also found coal. However, Mr. Hoover's opinion was that the amount of coal was not sufficient to justify a coal mining venture. The Court finds that the very nature of coal mining is speculative and a risk taking endeavor. If every geologist could state with precision the amount of coal available and the future viability of every mine, coal mining would no longer be a risk taking investment. Since the availability of coal is not an exact science, differing opinions will result. Furthermore, no evidence was presented as to the qualifications of any geologist who assessed Mr.

Zimmerman's mines. Therefore, the Court is unable to conclude that Mr. Zimmerman's reliance was unreasonable, particularly for a man who admittedly did not have experience in the coal mining field.

Based upon the evidence before this Court, the Court concludes that no affirmative acts of evading or defeating the taxes were alleged or proven by the Defendant. Furthermore, no circumstantial evidence of fraudulent behavior or "badges of fraud" were allegedly engaged in by Mr. Zimmerman. To the contrary, both parties agreed that Mr. Zimmerman fully participated in the audit conducted by Agent Becton. Also, the very nature of the coal mining business is that it is speculative and risky. The Court cannot definitively state that Mr. Zimmerman did anything more than take a risk to which he attempted to lessen by hiring his own experts to assure him of some viability. Therefore, the Court does not have before it sufficient evidence to find that Mr. Zimmerman "willfully attempted to evade or defeat a tax."

■ The Court also finds that Mr. Zimmerman did not file fraudulent returns, for which to except the debt from discharge pursuant to 11 U.S.C. § 523(a)(1)(C). At the time the deductions were taken, they were legitimate.[2] As stated above, there is no evidence before the Court which could lead to a conclusion that he knew that the Defendant's own geologist would find that the amount of coal would not justify the deduction, nor that he intentionally took deductions for investments for which he knew were not going to be productive. Therefore, the Court finds that although the Defendant later found the deductions to be illegitimate, that at the time of filing his returns, Mr. Zimmerman

did not take the deductions knowing them to be fraudulent.

A separate order will be entered in accordance with the foregoing.

### SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

As to Counts II and III of the Plaintiff's Complaint concerning violation of the Plaintiffs' Discharge under 11 U.S.C. § 524 and an action for injunctive relief not explicitly dealt with in the Court's Findings of Fact and Conclusions of Law entered on December 9, 1996, the Court enters this Supplement Findings of Fact and Conclusions of Law.

■ Addressing the alleged violation of the discharge injunction, the Court finds that the Defendant, acting pursuant to the opinion issued by the Tax Court, did not know that the discharge injunction was applicable. However, the Court finds that collecting funds from the Plaintiffs was an intentional act, and the discharge injunction was violated.

As to Count III's action for injunctive relief, the Court finds that the action was rendered moot once the Court received notice from the Plaintiffs that the Motion for Preliminary Injunction was withdrawn based upon the fact the defendant discontinued its collection efforts after this Proceeding was initiated. (Doc. 14).

An Amended Final Judgment will be entered in accordance with the foregoing.

---

2. *See* 26 C.F.R. § 1.616–1(a).