In re Thomas H. GREENE and Elaine A. Greene, Debtors.

Thomas H. GREENE and Elaine A. Greene, Plaintiffs,

v.

UNITED STATES of America, acting through the Internal Revenue Service, Defendant.

Bankruptcy No. 95–817–BKC–3P7. Adv. No. 96–42.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 17, 1997.

Lansing Roy, Jacksonville, FL, for Plaintiffs.

Bruce Russell, Washington, DC, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon a Complaint to Determine Dischargability of Tax Debt. After a trial on October 3, 1996 and October 30, 1996, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Plaintiffs Thomas H. Greene and Elaine A. Greene are husband and wife and were so at all times material to this proceeding. Plaintiff Thomas H. Greene practiced law in Jacksonville, Florida from 1958 to 1988.

2. On December 21, 1971, Plaintiffs purchased a parcel of real property, upon which they subsequently constructed their principal residence. (Deft.Ex. 12). On May 19, 1975, Plaintiffs obtained a $150,000 first mortgage for the purpose of building their home on the real property. (Deft.Ex. 14; Tr. at 119).

3. On January 25, 1982, Plaintiffs obtained a $70,000 second mortgage from Sun Bank, which was secured by the residence. (Deft.Ex. 15).

4. In 1984, Plaintiffs' 1984 tax return claimed losses from a tax shelter known as Urban Waste Disposal Association of Marion County, Ltd. (Deft.Ex. 1).

5. On October 19, 1987, the Internal Revenue Service (IRS) issued to Plaintiffs a Notice of Final Partnership Administrative Adjustment with respect to the disallowance of credits and deductions taken in connection with the tax shelter. (Deft.Ex. 11; Tr. at 115). Plaintiffs filed a Notice of Election to Participate in the Tax Court case challenging the tax shelter assessments for years including 1984. (Deft.Ex. 8). Immediately after issuance of the Notice of Final Partnership Administrative Adjustment, Plaintiffs obtained a $175,000 third mortgage from

George H. Hodges, Jr., which was secured by their principal residence. (Deft.Ex. 17). Plaintiffs used a portion of this loan to pay off the $70,000 second mortgage obtained from Sun Bank. (Deft.Ex. 18; Tr. at 165).

6. On February 1, 1988, judgment was entered against Thomas Greene in the United States District Court for the Middle District of Florida for making false statements to federally insured banks. (Deft.Ex. 3). Greene was sentenced to four years imprisonment. The conviction was upheld on appeal. (Plaintiff Ex. 2). Greene was ordered to begin his sentence on March 1, 1989. (Plaintiff Brief at 2).

7. On January 23, 1989, Plaintiffs conveyed by warranty deed their interest in their residence to Elaine A. Greene for ten dollars consideration. (Plaintiff Ex. 3). Plaintiff Thomas Greene testified that this conveyance was intended to protect his wife and family during his incarceration. (Plaintiff's Brief at 3).

8. On March 8, 1990, a Notice of Federal Tax Lien was filed against Plaintiff Thomas Greene for a 1984 tax liability that was assessed in 1986, which was distinct from the tax shelter assessments. (Plaintiff Ex. 5). This notice was refiled on January 15, 1992. (Plaintiff Ex. 5).

9. On February 23, 1990, Judgment was entered against Thomas Greene in the United States District Court for the Middle District of Florida for conspiring to commit mail and wire fraud. (Plaintiff Ex. 1).

10. In May of 1991, Thomas Greene was transferred to a halfway house in Jacksonville, Florida and subsequently released.

11. On October 16, 1991, Plaintiffs arranged for the assignment of their $150,000 first mortgage to John D. Uible. (Deft.Ex. 20; Tr. at 166). On December 31, 1991, Plaintiffs obtained a $122,678.35 fourth mortgage from George H. Hodges, Jr. which was secured by their personal residence. (Deft. Ex. 21).

12. Following the Tax Court decision on the tax shelter losses, assessments on the 1984 taxes were made and reported to Plaintiffs on June 28, 1993. (Deft.Ex. 16).

13. On August 31, 1993, Elaine A. Greene executed a quit claim deed transferring her interest in the Plaintiff's residence to their children, Julia B. Greene and Thomas H. Greene, Jr. (Plaintiff Ex. 4). The deed was recorded on September 1, 1993. Plaintiff Thomas H. Greene testified that the purpose of this transfer was to place the property in the name of a solvent borrower through whom a loan could be procured to pay the Plaintiffs' tax debt.

14. Thomas H. Greene further testified that because neither he nor Elaine Greene had the ability to borrow money, Lee Smith, a former law partner and close friend of Thomas Greene, had agreed to loan the Plaintiffs $150,000 from his pension and profit sharing plan.

15. Smith agreed to loan the money, provided the Defendant would release its liens on the property and allow Smith to place a mortgage on it to secure the loan. The $150,000 would then be offered by the Plaintiffs to the Defendant in settlement of the tax debt.

16. Plaintiff Thomas Greene testified that because the Defendant would not accept a sum less than $300,000 in offer in compromise, no settlement was concluded.

17. On March 4, 1994, Plaintiffs submitted a second offer in compromise to the Defendant in the amount of $75,000. (Deft. Ex. 16). Again, the Plaintiffs proposed that the Defendant release its liens to allow a mortgage to be placed on the property. The mortgage funds would then be used to settle Plaintiffs' outstanding tax liabilities.

18. Although the parties presented conflicting evidence regarding when the Defendant learned that the residence had been transferred to the Plaintiffs' children, both sides concede that this information was available and discussed during the negotiations surrounding the Plaintiffs' second offer in compromise. (Deft's. Brief at 8; Plaintiff's Brief at 6).

19. After unsuccessful negotiation, Plaintiffs withdrew the offer in compromise on July 21, 1994. (Deft.Ex. 16).

20. On February 22, 1995, Plaintiffs arranged an assignment of the $150,000 first

mortgage from John Uible to George H. Hodges. (Deft.Ex. 25).

21. Plaintiffs filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 24, 1995. The Defendant filed a proof of claim for $27,748 for assessed taxes, plus $56,018.85 for prepetition interest. (Deft.Ex. 29). Plaintiffs received a discharge on June 12, 1995.

22. On July 12, 1995, Plaintiff's residence was sold in foreclosure. (Tr. at 148). The Defendant elected not to exercise its right of redemption afforded by law within the statutory period, and its lien was eliminated (Tr. at 147).

23. On February 8, 1996, Plaintiffs filed a complaint to determine the dischargability of tax debt for tax years 1980 through 1989. On September 24, 1996, this Court granted Plaintiffs' Motion for Summary Judgment as to tax years 1980 through 1983 and 1985 through 1989, finding the tax debts for those years to be dischargeable. The Court denied Plaintiffs' Motion for Summary Judgment as to tax year 1984. (Adv.Pro.File.Doc. 20).

## CONCLUSIONS OF LAW

The parties agree that the sole issue for determination in this proceeding is whether the Plaintiffs willfully attempted to evade or defeat their 1984 tax liability. Bankruptcy Code section 523(a)(1)(C) excepts from a debtor's discharge any taxes for which the debtor filed a fraudulent return or which the debtor willfully attempted to evade or defeat.

In relevant part, § 523(a)(1)(C) provides:

[a] discharge under section 727 ... does not discharge an individual debtor from any debt—

(1) ... for a tax or custom duty

(c) with respect to which the debtor made a fraudulent return or willfully attempted in an manner to evade or defeat such tax. . . .

11 U.S.C. § 523(a)(1)(C).

■ In a section 523(a)(1)(C) action, the burden is on the government to show by a preponderance of the evidence that the debtor willfully attempted to evade or defeat a tax liability. *Grogan v. Garner*, 498 U.S.

279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Tai v. United States (In re Tai)*, No. 95–4480–6B7, 1996 WL 529411 (Bankr.M.D.Fla. Aug. 9, 1996); *Zimmerman v. United States (In re Zimmerman)*, 204 B.R. 84 (Bankr. M.D.Fla.1996). Generally, exceptions to discharge are narrowly construed to provide honest debtors an opportunity for a fresh start. *Burgess v. United States (In re Burgess)*, 199 B.R. 201, 205 (Bankr.N.D.Ala. 1996).

Courts interpreting section 523(a)(1)(C) have disagreed over what standard should be utilized to determine whether a debtor has acted "willfully." Some courts have adopted the civil standard of willfulness, which only requires the government to prove that a debtor acted voluntarily, consciously, and intentionally in attempting to evade taxes in any manner. *See Toti v. United States (In re Toti)*, 24 F.3d 806 (6th Cir.1994). The Eleventh Circuit Court of Appeals, however, has adopted the more stringent criminal standard, which requires the government to prove that the debtor accomplished some affirmative act designed to defraud the government. *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153 (11th Cir.1995).

Under this standard, the Eleventh Circuit has found that the government must prove more than failure to file a tax return. *Id.* at 1158. *See also Zimmerman v. United States (In re Zimmerman)*, 204 B.R. 84, 88 (Bankr. M.D.Fla.1996) (stating that under *Haas*, "a knowing failure to pay taxes, without more, is not a willful attempt to evade or defeat as required by the statute; an affirmative act is required, not mere non-payment."); *Burgess v. United States (In re Burgess)*, 199 B.R. 201, 206 (Bankr.M.D.Fla.1996) (discussing the willfulness standard in the Eleventh Circuit).

■ Courts applying the Eleventh Circuit standard have found that direct evidence of affirmative acts is difficult to elicit. *Zimmerman v. United States (In re Zimmerman)*, 204 B.R. 84 (Bankr.M.D.Fla.1996). Consequently, courts have developed a list of factors indicative of fraud to determine a debtor's intent. These "badges of fraud," when examined in the totality of the circumstances, can infer a debtor's fraudulent in-

tent. *Id.* at 88. The badges of fraud utilized by courts in this District include:

> (1) the recurrence of the understatement of income for more than one tax year; (2) the understatement of income; (3) implausible or inconsistent explanations of behavior; (4) inadequate records; (5) transfer of assets to a family member; (6) transfer for inadequate consideration; (7) transfer that greatly reduced assets subject to IRS execution; and (8) transfers were made in the face of serious financial difficulties.

*Id.* (quoting *Griffith v. United States (In re Griffith)*, 161 B.R. 727, 733 (Bankr.S.D.Fla. 1993).

■ In this case, the Defendant contends that Thomas Greene sheltered income from his law practice. When the Defendant disallowed the losses from the shelter and assessed additional taxes, Greene attempted to drain equity from the Plaintiffs' personal residence through a series of mortgage transfers, eventually transferring the home to his children for no valuable consideration while maintaining control and possession of the property. The Defendant argues that this line of activity was a calculated, affirmative act to defraud the government and to willfully evade the 1984 tax assessment.

Although factually correct and legally plausible, Defendant's argument that Plaintiffs' actions are indicative of fraud must be balanced against the Plaintiffs' evidence. Thomas H. Greene testified that he initially transferred the property to Elaine A. Greene to ensure her financial security while he was incarcerated. Later, mortgages were placed on the property to raise money for Greene's legal defense expenses and to secure money loaned to Mrs. Greene while Mr. Greene was in prison. Most of the mortgages were made by close friends of the Plaintiffs. The property was ultimately transferred to the Plaintiffs' children as a method of finding a solvent borrower through whom another friend of Plaintiffs' could lend money to settle the Plaintiffs' tax debt. The Defendant had knowledge of the transfer to the children.

Based on the totality of the circumstances, the Court concludes that Plaintiffs' actions do not equate a willful attempt to evade or defeat the 1984 tax assessment. Plaintiffs engaged in a series of transactions to assist them in managing devastating financial difficulty. Through these transactions, Plaintiffs made two attempts to settle their tax obligations. Although the settlements were unsuccessful, the Court concludes that such attempts demonstrate the Plaintiffs' desire to satisfy their debts rather than evade them.

In addition to the list of factors used by other courts, the Defendant contends that the Plaintiffs transferred property in violation of the Florida Uniform Fraudulent Transfer Act (UFTA). Fla.Stat. ch. 726.106 (1995). The Defendant contends that the Court should view a violation of this statute as another "badge of fraud" which infers Plaintiffs' attempt to willfully evade their tax obligation. Under the UFTA, an existing creditor can prove a transfer is fraudulent by showing that the exchange was without value when the debtor was insolvent, or by showing that the debtor transferred property to an insider for an antecedent debt when the debtor was insolvent and the insider should have known that the debtor was insolvent. Fla.Stat. ch. 726.106 (1995).[1]

Another section of the UFTA, § 726.105, provides a list of factors which can be examined to infer a debtor's fraudulent intent. These factors include a debtor's transfers to insiders or family members, the debtor's retention of possession or control over the property after the transfer, lack of consider-

---

1. Florida Stat. 726.106 provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
Fla.Stat. ch. 726.106 (1995).

**26**

ation for the transfer, and insolvency of the debtor. Fla.Stat. ch. 726.105 (1995).

In this case, the Plaintiffs transferred property to their children for little consideration and were insolvent when they did so. Additionally, they retained possession and control of the property after the transfer. Thus, it appears Plaintiffs technically violated the UFTA.

However, as the Defendant suggests, the Court examines a violation of the UFTA as merely one badge of fraud to be considered in conjunction with all other facts and circumstances surrounding the Plaintiffs' actions. The Court finds that such a technical violation, even when combined with the factors previously discussed, is insufficient to prove that the Plaintiffs acted affirmatively to evade their tax liability.

In this case, the Plaintiffs' explanation of their actions dispels any inference of fraudulent intent. The Court finds that Plaintiffs asserted with credibility their honest attempt to find ways to pay off the tax debt. The Defendant rejected two settlement offers from the Plaintiffs and subsequently lost its rights in the property by failing to exercise its redemption rights upon foreclosure. It appears to the Court that the Defendant is now trying to piece together facts from which a willful attempt to evade a tax could be inferred. The Court, however, upon consideration of the totality of the circumstances in this case, finds that the Defendant has failed to meet its burden of proof.

### CONCLUSION

The Plaintiffs engaged in a series of mortgage transactions and property transfers to secure payment of legal defense costs, provide financial security for their family, and create a vehicle for payment of their outstanding tax liabilities. Upon consideration of the circumstances surrounding Plaintiffs' actions, the Court finds that Plaintiffs did not willfully attempt to evade or defeat their 1984 tax obligation. The Defendant has failed to prove that the tax debt should be excepted from Plaintiffs' discharge pursuant to 11 U.S.C. § 523(a)(1)(C). Accordingly, the Court concludes that Plaintiffs' 1984 tax liability is dischargeable. The Court will enter a judgment consistent with these findings of fact and conclusions of law.

### JUDGMENT

This proceeding came before the Court upon a Complaint to Determine Dischargability of Tax Debt. Upon Findings of Fact and Conclusions of Law separately entered, it is

ORDERED:

1. Judgment is entered in favor of the Plaintiffs, Thomas H. Greene and Elaine A. Greene, and against the Defendant, United States of America, acting through the Internal Revenue Service.

2. Plaintiffs' tax debt for tax year 1984 is dischargeable pursuant to 11 U.S.C. § 727.